United States District Court
District of Massachusetts

Tony B. Gaskins,
   Plaintiff,

v.

UMass Correctional Health Service, et al.,
   Defendants.

Civil Action
No. 05-10858-GAO

### Motion for Leave of Court to Amend Civil Complaint

Now comes the Plaintiff in the above-entitled civil action pursuant to Fed. R. Civ. P. 15(a), moves this Honorable Court for leave to amend his complaint.

1. In the amended complaint, Plaintiff added two defendants, Dr. Carl Singletary and Stanley Galias, Nurse Practitioner, both directly involved with the after care of his surgery and who are employees of UMass Correctional Health Services.

Respectfully Submitted,

Tony B. Gaskins
Tony B. Gaskins, Pro Se
MCI-Cedar Junction
P.O. Box 100
South Walpole, MA 02071

Date: 5/26/05

United States District Court
District of Massachusetts

Tony B. Gaskins,
    Plaintiff,

v.

UMass Correctional Health Services;
Carl Singletary, Doctor; Stanley
Galas, Nurse Practitioner;
David Nolan, Superintendent;
Lisa Mitchell, Deputy Superintendent, et al.,
    Defendants.

Civil Action
No. 05-10858-GAO

Amended Verified
Civil Complaint
and Jury Demand

## I. Introduction

This is a civil complaint brought by plaintiff, Tony B. Gaskins, against the defendants for being deliberately indifferent to his "serious medical needs" towards his surgically repaired right shoulder, in which by not receiving the proper after care caused plaintiff permanent damage to his shoulder disabling it from "full" mobility in violation of the Federal Constitution.

-2-

## II. JURISDICTION

Jurisdiction is invoked upon this court pursuant to the 8th Amendment and 42 U.S.C. §1983.

## III. ~~PARTIES~~

1. Tony B. Gaskins, the plaintiff, is and was at all times relevant to this complaint.

2. UMass Correctional Health Service, the defendants, whose address is: One Research Drive, Suite 120C, Westborough, MA. 01581, is and was at all times relevant to this complaint, and are being sued in their individual and official capacity.

3. Dr. Carl Singletary, the defendant, is employed by UMass Correctional Health as a private contractor at MCI-Cedar Junction, P.O. Box 100, South Walpole, MA. 02071, is and was at all times relevant to this complaint, is being sued in his individual and official capacity.

4. Nurse Practitioner Stanley Galas, the defendant, is employed by UMass Correctional Health as a

- 3 -

PRIVATE CONTRACTOR AS THE HEALTH SERVICE ADMINISTRATOR AT: MCI-CEDAR JUNCTION, P.O. BOX 100 SOUTH WALPOLE, MA. 02071, IS AND WAS AT ALL TIMES RELEVANT TO THIS COMPLAINT, IS BEING SUED IN HIS OFFICIAL AND INDIVIDUAL CAPACITY.

5. SUSAN J. MARTIN, THE DEFENDANT, WHO IS THE DIRECTOR OF THE HEALTH SERVICE DIVISION OF THE DEPARTMENT OF CORRECTION WHOSE ADDRESS IS: 12 ADMINISTRATION RD., P.O. BOX 426, BRIDGEWATER, MA. 02324, IS AND WAS AT ALL TIMES RELEVANT TO THIS COMPLAINT, IS BEING SUED IN HER OFFICIAL AND INDIVIDUAL CAPACITY.

6. DAVID NOLAN, THE DEFENDANT, IS THE SUPERINTENDENT, WHOSE ADDRESS IS: MCI-CEDAR JUNCTION, P.O. BOX 100, SOUTH WALPOLE, MA. 02071, IS AND WAS AT ALL TIMES MENTIONED AND RELEVANT TO THIS COMPLAINT, IS BEING SUED IN HIS OFFICIAL AND INDIVIDUAL CAPACITY.

7. LISA MITCHELL, THE DEFENDANT, IS THE DEPUTY SUPERINTENDENT, WHOSE ADDRESS IS: MCI-CEDAR JUNCTION, P.O. BOX 100, SOUTH WALPOLE, MA. 02071, IS AND WAS AT ALL TIMES RELEVANT TO THIS COMPLAINT, IS BEING

-4-

SUED IN HER OFFICIAL AND INDIVIDUAL CAPACITY.

### IV. Statement of Facts

8. On December 8, 2004, the Plaintiff had orthoscopic surgery on his right shoulder in his rotator cuff and a piece of his clavical bone had to be removed. Shattuck Hospital performed the surgery.

9. During the period of the surgery, the Plaintiff was housed in 10 Block Segregation Unit in cell #42.

10. There was a written order by the surgical doctors that the staples from the surgery had to be removed two weeks after surgery. At the time he had no mobility in his right shoulder and arm, and had a "no cuff" order for his right arm.

11. Two weeks after the surgery, Plaintiff was being escorted to the Health Service Unit located in 10 Block to have the dressing on his right shoulder changed.

-5-

12. As plaintiff was receiving treatment on his shoulder from a nurse named "Michelle," Dr. Carl Singletary was present and examined his shoulder and ordered "Michelle" to remove the staples from the shoulder.

13. Shortly after the staples removal, the plaintiff returned to the Lemuel Shattuck Hospital as a "follow up" to his surgery and was given a "Theroband" and some instructions to perform self-physical therapy on his shoulder.

14. The Shattuck Doctor also wrote up an order for the plaintiff to receive physical therapy through the prison's Health Service Unit for the lifting of weights and etc. to develop muscle mass lost during and after surgery.

15. Upon returning to the prison with the Theroband to use for exercise, the prison administration confiscated the Theroband from the plaintiff and would not allow him to use it.

16. The plaintiff complained to nurse "Michelle" who was making rounds in 10 Block and the head nurse Jeff Fisher that his Theroband was con-

-6-

fiscated by the Shift Commander, and both Michelle and Fisher told Plaintiff that its nothing they could do, but will report it to Stanley Galas, NP, who is the Health Service Administrator at the prison. Nurse Practitioner Stanley Galas did nothing to help Plaintiff.

17. The Plaintiff then complained to Defendants Nolan and Mitchell that he must receive the Physical Therapy as ordered by the Physician to regain strength and mobility in his shoulder or his shoulder would have to be "re-operated" on again. Nolan and Mitchell ignored his pleas.

18. Susan J. Martin received a letter from Laura Anderson, Paralegal, who works for Massachusetts Correctional Legal Services, about Plaintiff's shoulder and how he has not received Physical Therapy. A same letter was sent to Stanley Galas.

19. Stanley Galas responded that Plaintiff was seen by Physical Therapist on April 5, 2005.

20. Plaintiff's sister, Sindey A. Hayes, called the prison and spoke to Defendant Mitchell,

-7-

who, in turn, told Mrs. Hayes, "I will look into it."

21. Months passed by and Plaintiff returned to Shattuck Hospital on March 10, 2005 as another "follow up." The doctor, Mary Connolly questioned if Plaintiff received "any" physical therapy since their last meeting. Plaintiff said no.

22. Mary Connolly was frustrated and said that if Plaintiff did not receive physical therapy soon, it could cause scar tissue build up and permanent damage.

23. Ms. Connolly noticed that his shoulder was very "weak" and that he lost a lot of "muscle mass." She said they may have to re-operate on his shoulder to remove the scar tissue and to "move" the shoulder joint.

24. Because of this deliberate indifference towards Plaintiff's "serious medical needs," he has suffered greatly. He is in constant pain and is unable to lift his arm above his head without using his left hand to assist his right arm.

25. Plaintiff no longer has "full" mobility in his right shoulder arm area and has lost a large

-8-

AMOUNT OF MUSCLE MASS.

26. THE DEFENDANTS, UMASS CORRECTIONAL HEALTH SERVICE RECEIVED A GRIEVANCE FROM PLAINTIFF AND TOOK NO ACTION AND ALLOWED PLAINTIFF TO SUFFER.

27. THE DEFENDANTS ACTIONS WERE RECKLESS, WANTON, WILFULL, DELIBERATELY INDIFFERENT TOWARDS HIS "SERIOUS MEDICAL NEEDS", AND HAVE INFLICTED MENTAL AND EMOTIONAL DISTRESS UPON THE PLAINTIFF BECAUSE HE IS NOW PHYSICALLY DISABLED BECAUSE OF THE DELAY IN MEDICAL TREATMENT BY DEFENDANTS.

28. BECAUSE OF THIS DISABILITY, PLAINTIFF CANNOT BE CUFFED BEHIND HIS BACK AND MUST EITHER BE CUFFED IN THE FRONT OR IN "WAIST CHAINS." THE PAIN IS TOO UNBEARABLE TO BE HANDCUFFED BEHIND THE BACK.

29. PLAINTIFF'S RIGHT SHOULDER JUMPS IN AND OUT OF ITS SOCKET ON REGULAR OCCASIONS CAUSING HIM GREAT PAIN.

30. PLAINTIFF CAN NOT SLEEP GOOD AT NIGHT BECAUSE IF HE LAYS ON THE SHOULDER, IT CAUSES A

-9-

great deal of pain that shoots through his body like electricity causing discomfort and for him to try to sleep in one position to get some sleep.

31. Then on or about April 5, 2005, Plaintiff was taken to NCCI-Shirley Medium to attend a session of physical therapy, almost five months later.

32. Plaintiff has suffered physically and emotionally, and continues to suffer to this day and will forever continue to suffer because of this deliberate indifference.

33. The physical therapy Plaintiff is beginning to receive is four-plus months too late.

## V. Cause of Action

Plaintiff realleges and reaffirms paragraphs 1-33

### Count I.

34. UMass Correctional Health Service, a private contractor to administer the health care of prisoners, actions here delaying almost four and

-10-

ONE-HALF MONTHS TO GIVE THE PLAINTIFF PHYSICAL THERAPY ON HIS SURGICALLY REPAIRED SHOULDER WAS "DELIBERATE INDIFFERENCE TO THE SERIOUS MEDICAL NEEDS" OF THE PLAINTIFF RESULTING IN A "GENUINE PRIVATION," THEREBY AMOUNTING TO CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

<u>COUNT II.</u>

35. DR. CARL SINGLETARY IS THE HEAD DOCTOR IN CHARGE AT THE PRISON WHO WAS AWARE OF PLAINTIFF'S "SERIOUS MEDICAL NEEDS" AND FAILED TO TAKE THE STEPS NECESSARY TO ENSURE PLAINTIFF RECEIVED THE PROPER AND TIMELY AFTER CARE ON HIS SHOULDER AFTER THE REMOVAL OF THE STAPLES RESULTING IN A "GENUINE PRIVATION," THEREBY AMOUNTING TO CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE 8TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND 42 U.S.C. § 1983.

<u>COUNT III.</u>

-11-

86. Stanley Galas, NP, is the Health Service Administrator at the Prison who oversees all daily activities of the medical staff at the prison, and addresses all complaints medically, and was aware of the medical order for plaintiff to receive physical therapy "immediately" and failed to take proper steps to ensure plaintiff received proper and timely treatment resulting in a "genuine privation," thereby amounting to cruel and unusual punishment in violation of the 8th and 14th Amendments to the United States Constitution, and 42 U.S.C. § 1983.

<u>Count IV</u>:

87. Lisa Mitchell and David Nolan, as the Deputy Superintendent and Superintendent of MCI-Cedar Junction — they were obligated to assure that plaintiff's "serious medical needs" was attained but disregarded his pleas and now plaintiff is permanently disabled, where they had the power

-12-

TO HAVE HAD PLAINTIFF TRANSPORTED TO MCI-SHIRLEY MEDIUM TO RECEIVE PHYSICAL THERAPY IMMEDIATELY AFTER THE STAPLES WERE REMOVED FROM HIS SHOULDER. THEY WERE "DELIBERATELY INDIFFERENT TO THE SERIOUS MEDICAL NEEDS" OF THE PLAINTIFF RESULTING IN A "GENUINE PRIVATION," IN VIOLATION OF THE 8TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND 42 U.S.C. §1983.

COUNT V.

38. SUSAN J. MARTIN'S POSITION IS THAT SHE IS RESPONSIBLE FOR THE DELIVERY OF QUALITY MEDICAL SERVICES TO THE ENTIRE MASSACHUSETTS DEPARTMENT OF CORRECTION INMATE POPULATION. IN THIS CASE, SHE FAILED MISERABLY. UNDER HER TUTELAGE AND SUPERVISION, THE "SERIOUS MEDICAL NEEDS" OF THE PLAINTIFF WAS IGNORED RESULTING IN A "GENUINE PRIVATION," IN VIOLATION OF THE 8TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND 42 U.S.C. §1983.

PLAINTIFF REALLEGES AND REAFFIRMS PARAGRAPHS 1-38.

-13-

### VI. PRAYER FOR RELIEF

WHEREFORE, THE PLAINTIFF PRAYS FOR THE FOLLOWING RELIEF:

A. AWARD PLAINTIFF $250,000.00, JOINTLY AND SEVERALLY, AGAINST EACH DEFENDANT IN PUNITIVE DAMAGES FOR THE DELIBERATE INDIFFERENCE TO THE "SERIOUS MEDICAL NEEDS" OF THE PLAINTIFF;

B. AWARD PLAINTIFF $100,000.00, JOINTLY AND SEVERALLY, AGAINST EACH DEFENDANT IN COMPENSATORY DAMAGES FOR THE INFLICTION OF MENTAL AND EMOTIONAL DISTRESS ON PLAINTIFF FOR HIS SUFFERING;

C. AWARD PLAINTIFF ATTORNEY FEES AND COURT COSTS;

D. PLAINTIFF DEMANDS A TRIAL BY JURY;

E. GRANT PLAINTIFF ANY OTHER RELIEF THIS COURT DEEMS JUST AND EQUITABLE.

RESPECTFULLY SUBMITTED,

*Tony B. Gaskins*
TONY B. GASKINS, PRO SE
MCI-CEDAR JUNCTION
P.O. BOX 100
SOUTH WALPOLE, MA. 02071

DATED: 5/26/05

### VII. VERIFICATION

I, TONY B. GASKINS, VERIFY THAT THE FACTS STATED HEREIN ARE TRUE AND ACCURATE.

*Tony B. Gaskins*
TONY B. GASKINS