UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TONY B. GASKINS                        CIVIL ACTION NO. 05-CV-10858-GAO

          Plaintiff,

vs.

UMASS CORRECTIONAL
HEALTH SERVICES, ET AL.

          Defendants.

**DEFENDANT NOLAN, MITCHELL AND MARTIN'S MEMORANDUM IN
SUPPORT OF THEIR MOTION TO DISMISS AND/OR
MOTION FOR SUMMARY JUDGMENT**

Now come defendants David Nolan, Lisa Mitchell and Susan Martin and submit
this Memorandum in Support of their Motion to Dismiss and/or Motion for Summary
Judgment.

**STATEMENT OF FACTS**

Plaintiff, Tony G. Gaskins, ("Gaskins") is a pro se inmate lawfully in the custody
of the Department of Correction ("Department") and is presently incarcerated at MCI
Cedar Junction ("Cedar Junction") in Walpole, Massachusetts. The defendants include
Cedar Junction Superintendent David Nolan, Deputy Superintendent Lisa Mitchell and
Department of Correction Director of Health Services Susan Martin. He is suing each
defendant in his/her official and individual capacity. Plaintiff also names "UMass
Correctional Health Services" as a defendant.[1]

In his Complaint, plaintiff alleges that he received inadequate medical care
following surgery on his shoulder in December 2004. Specifically, he claims that he has
not received physical therapy. The Complaint contains vague allegations that plaintiff

complained about his shoulder to defendants and was ignored.  Plaintiff fails to explain

how, when or where he allegedly communicated his concerns to Superintendent Nolan.

He states that his sister contacted Deputy Mitchell by telephone.  Finally, he claims only

that Susan Martin received a letter from paralegal Laura Anderson to Health Services

Administrator Stanley Galas about plaintiff's shoulder.   For the following reasons,

plaintiff's Complaint must be dismissed.   In addition, if plaintiff's Motion to Amend his

Complaint is allowed, the Amended Complaint should also be dismissed for the reasons

set forth herein.

## STATEMENT OF UNDISPUTED FACTS

1.      Plaintiff is an inmate currently incarcerated at MCI Cedar Junction.  Complaint,

        page 1.

2.      On December 8, 2004, plaintiff had surgery on his right shoulder at Lemuel

        Shattuck Hospital.  Amended Complaint, paragraph 8.

3.      Plaintiff filed the instant case on February 11, 2004.

4.      From January 1, 2003 to the present, the University of Massachusetts Medical

        School ("UMMS") has been the Department of Correction's health services

        contractor.  Affidavit of Susan Martin, attached as Exhibit 1, paragraph 3.

5.      Department of Correction employees do not have direction or control over the

        independent medical contractors and the manner in which medical professional

        determine the appropriate medical treatment for prisoners.   Rather, all decisions

        with respect to type and timing of medical care provided to prisoners are solely

        within the province of medical professionals.  Martin Affidavit, paragraphs 4 and

        5.

---

[1] UMMS is not represented by the undersigned counsel.

6.    David Nolan, Lisa Mitchell and Susan Martin do not have any control over UMMS and its employees in the manner in which UMMS medical professionals determine the appropriate medical treatment for prisoners, including Mr. Gaskins. <u>Martin Affidavit</u>, paragraphs 5 and 6.

7.    The Department of Correction grievance policy, 103 CMR 491.08, states that, "medical or clinical decisions related to an inmate's physical or mental condition shall not be grievable under 103 CMR 491.00, as the medical contractor is required to maintain its own grievance procedure, however, matters concerning access to medical or mental health care are grievable." <u>See</u> 103 CMR 491, attached as Exhibit 2.

8.    Plaintiff's Complaint contains no evidence that Superintendent Nolan was aware of plaintiff's medical concerns.

9.    Plaintiff's sister called Deputy Superintendent Lisa Mitchell about plaintiff's shoulder complaints. <u>Complaint</u>, paragraph 20.

10.    Susan Martin was copied on a letter dated March 11, 2005, from Massachusetts Correctional Legal Services paralegal Laura Anderson to Health Services Administrator Stanley Galas. <u>Martin Affidavit</u>, paragraph 8.

11.    Susan Martin was also copied on the response from Mr. Galas to Ms. Anderson, dated April 4, 2005, in which Mr. Galas confirmed that Mr. Gaskins had been scheduled for physical therapy. <u>Id.</u>

12.    Medical records attached to the Affidavit of Susan Martin reflect that Mr. Gaskins has received ongoing treatment, including physical therapy, for his shoulder. <u>See</u> Martin Affidavit, paragraph 9 and attached medical records.

13.    The aforesaid records reflect, among other things, that plaintiff had physical

therapy appointments on April 25, 2005, May 13, 2005 and was scheduled for an

appointment on June 6, 2005.  Id.  Records also indicate that he had an orthopedic

consults on January 10, 2005 and March 10, 2005.  Id.

## ARGUMENT

### I.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THEY WERE NOT DELIBERATELY INDIFFERENT TO GASKINS' MEDICAL NEEDS IN VIOLATION OF THE EIGHTH AMENDMENT.

Gaskins alleges that defendants Nolan, Mitchell and Martin were deliberately

indifferent to his medical needs in violation of the Eighth Amendment. Gaskins' theory is

that Martin, Nolan and Mitchell, none of whom are physicians, should be liable for

damages because UMMS staff allegedly failed to refer Gaskins for physical therapy

following shoulder surgery.  Medical records show that Gaskins has been seen numerous

times by medical staff following his shoulder surgery in December 2004.  See medical

records attached to Sue Martin Affidavit, Exhibit 1.

Analysis of Gaskins' Eighth Amendment claim must begin with the proposition that

in the medical context...a complaint that a physician has been negligent in
diagnosing or treating a medical condition does not state a valid claim of
medical mistreatment under the Eighth Amendment. Medical malpractice
does not become a constitutional violation merely because the victim is a
prisoner. In order to state a cognizable claim, a prisoner must allege acts
or omissions sufficiently harmful to evidence deliberate indifference to
serious medical needs. It is only such indifference that can offend evolving
standards of decency in violation of the Eighth Amendment.

Estelle v. Gamble, 429, U.S. 97, 105-06 (1976). "A medical need is 'serious' if it is one that

has been diagnosed by a physician as mandating treatment, or one that is so obvious that

even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault

v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990); Dias v. Vose, 885 F.Supp. 53

(D.Mass. 1994), aff'd 50 F.3d 1. For the purpose of this motion, defendants will assume, without conceding, that Gaskin's shoulder related problem constitutes a serious medical need.

UMMS staff was not deliberately indifferent to Gaskins' needs. Records reflect that they saw him on numerous occasions. An inmate "deserves adequate medical care, [but] he cannot insist that his institutional host provide him with the most sophisticated care that money can buy." U.S. v. DeCologero, 821 F.2d 39, 42 (1st Cir. 1987). Disagreements about the quality and the source of treatment simply do not rise to an Eighth Amendment violation. Ferranti v. Moran, 618 F.2d 888, 890-891 (1st Cir. 1980); Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988)("Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice"). Sires v. Berman, 834 F.2d 9, 13 (1st Cir. 1987); Layne v. Vinzant, 657 F.2d 468, 471 (1st Cir. 1981).

Quite apart from the objective considerations, Gaskins cannot show that defendants Nolan, Mitchell or Martin had the subjective state of mind or intent necessary for a "deliberate indifference" claim. Such a state of mind or intent is similar to criminal recklessness and requires actual knowledge of impending harm which is easily preventable. Dias v. Vose, 885 F.Supp. at 57, citing, Farmer v. Brennan, 511 U.S. 825, 835-837, 114 S.Ct. 1970, 1978-1979, (1994). See also Coyne v. Cronin, 386 F.3d 280 at 288-289(1st Cir. 2004); Desrosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991)(a claim of deliberate indifference requires proof that the defendant had a culpable state of mind and intended wantonly to inflict pain). While state of mind issues generally are not susceptible to summary judgment, "where there is no evidence of treatment so inadequate as to shock the

conscience, let alone that any deficiency was intentional or where there is no evidence of acts or omissions so dangerous (in respect to health or safety) that a defendant's knowledge of a large risk can be inferred, summary judgment is appropriate." Dias v. Vose, 865 F.Supp at 57, citing Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991) Particularly in this regard, Gaskins cannot establish the existence of an essential element of his case, because he has not submitted any evidence demonstrating that the care rendered by UMMS was inadequate, let alone conscience-shocking.

Section 1983 "creates a species of tort liability." Heck v. Humphrey, 512 U.S. 483, 114 S.Ct. 2364, 2370 (1994), citing Memphis Community School District v. Stachura, 477 U.S. 299, 306, 308, 106 S.Ct. 2537, 2542, 2543, 91 L.Ed.2d 249 (1986). Actions under this statute are governed by common law tort principles. Id.; Malley v. Briggs, 475 U.S. 335, 344 n.7, 106 S.Ct. 1092, 1098 n.7, 89 L.Ed.2d 271 (1986); Carey v. Piphus, 435 U.S. 247, 257-259, 98 S.Ct. 1042, 1049-50, 55 L.Ed.2d 252 (1978); Imbler v. Pachtman, 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976). The underlying common law tort is medical malpractice. Accordingly, Gaskins' burden includes proof of the appropriate standard of care for treating his condition, proof that the UMMS defendants deviated from the standard of care, and proof that such deviation was the proximate cause of actual injury. As stated above, a claim of deliberate indifference requires far more than proof of simple malpractice, but in any event, defendants are certainly entitled to summary judgment if Gaskins lacks proof of the underlying elements of a malpractice case.

Under state law, negligence and causation in a medical malpractice case cannot be inferred, but must be presented through expert opinion. Harlow v. Chin, 405 Mass. 697, 701-702 (1989); Forlano v. Hughes, 393 Mass. 502, 507 (1984)("It is only in exceptional

circumstances that a jury instructed by common knowledge and experience may without the aid of expert medical opinion determine whether the conduct of a physician toward a patient is violative of the special duty which the law imposes as a consequence of this particular relationship (citations omitted)").  A plaintiff claiming medical malpractice bears the burden of proving the causal connection between the alleged medical negligence and the plaintiff's injuries. Held v. Bail, 28 Mass. App. Ct. 919, 920 (1989). The jury may not speculate about the possible results of administering or withholding particular therapy. Id. If the causation issue involves questions of medical science or technology, the jury requires the assistance of expert testimony. Id. Similarly, courts reject claims of deliberate indifference to serious medical needs where the inmate, like Gaskins is unable to offer more than his own assertion that the care provided was inadequate. See Dulaney v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997); Goffman v. Gross, 59 F.3d 668, 672 (7th Cir. 1995) (Inmate lay testimony cannot establish the showing of medical causation necessary to sustain a claim of harm caused by second hand smoke).

In short, Gaskins' case amounts to no more than an invitation for the Court to "second guess" the judgment of medical professionals. Layne v. Vinzant, 657 F.2d at 331. Since his claim of inadequate medical care is founded only on "improbable inferences and unsupported speculation," Woods v. Friction Materials, Inc., 30 F.3d at 259, defendants Nolan, Mitchell and Martin are entitled to summary judgment.

Even if Gaskins had produced medical evidence showing that the UMMS defendants failed to provide him adequate treatment, it would not lead to the liability of defendants Nolan, Mitchell or Martin.  None of these defendants supervise UMMS staff, nor did they play a role in determining what care individual clinicians should provide. This is a

matter of professional judgment.    Moreover, even if defendants Nolan, Mitchell or Martin did supervise UMMS defendants, they would still not be liable for their actions.  <u>Respondeat superior</u> does not apply to actions brought under 42 U.S.C. § 1983. <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 696 n.58 (1978); <u>Votour v. Vitale</u>, 761 F.2d 812, 189 (1st Cir. 1985), <u>cert</u>. <u>denied</u>, 106 S.Ct. 879 (1986); <u>Kosta v. Hogg</u>, 560 F.2d 37, 40 (1st Cir. 1977).

In the absence of personal involvement, a supervisor will be liable for acts of a subordinate only if (1) the subordinate's behavior results in a constitutional violation and (2) the supervisor's action was "affirmatively linked" to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference. <u>Hegarty v. Somerset County</u>, 53 F.3d 1367, 1379-1380 (1st Cir. 1995). Negligence is inadequate to establish supervisory liability. <u>Febus-Rodriguez v. Betancourt-Lebron</u>, 14 F.3d 87 (1st Cir. 1994). Rather, the plaintiff must show that the supervisor acted with deliberate indifference, in addition to the causation requirement linking the supervisor's conduct to the subordinate's violative conduct. <u>Maldonado-Denis v. Castillo-Rodriguez</u>, 23 F.3d 576, 582 (1st Cir. 1994); <u>Febus-Rodriguez v. Betancourt-Lebron</u>, 14 F.3d at 92 (supervisor's acts or omissions must amount to the reckless or callous indifference to the constitutional rights of others; <u>i.e.</u>, that it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights). Causation may be established by showing that the supervisor adopted or approved an unlawful policy or custom, <u>Id</u>.; <u>Naughton v. Bevilacqua</u>, 605 F.2d 586, 589 (1st Cir. 1979); or knew of, but failed to correct an ongoing wrongdoing. <u>Layne v. Vinzant</u>, 657 F.2d at 471.

However, there is no supervisory liability where the alleged violations stem largely from sporadic incidents without the requisite personal involvement. Oklahoma City v. Tuttle, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 3436-37, 85 L.Ed.2d 791 (1985); Rodriquez v. Furtado, 950 F.2d 805, 813 (1st Cir. 1991); Billings v. Commonwealth, 498 F.Supp. 883, 884 (D.Mass 1980). There must be either some participation or acquiescence by the supervising official in the alleged constitutional deprivation, Delaney v. Dias, 415 F.Supp. 1341, 1354 (D.Mass. 1976), or an "affirmative link" between the conduct of the supervisor and that of the employee. Votour v. Vitale, 761 at 880 (in the absence of a pattern of past violence so striking to permit an inference of the supervisor's encouragement or approval of subordinates' actions, no liability, even though police chief knew of past complaints of brutality).

Defendants' alleged knowledge of Gaskins' Complaint cannot, as a matter of law, result in liability. As Judge Aldrich forcefully admonished in a unanimous opinion reversing a judgment against supervisory prison officials in a situation comparable to the one here,

> we do not see how the Commissioner [of Correction], or the superintendent of a prison as large as those involved here, can be held responsible for the individualized [as opposed to prison-wide] complaints of every prisoner in his charge, except on the basis of actual notice of facts sufficient to put him on inquiry.

Layne v. Vinzant, 657 F.2d at 471 n.3 (citations omitted). Defendants Nolan, Mitchell and Martin are prison officials, not medical professionals. As such, they are entitled to rely upon the judgment of medical professionals. Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)(because they lacked medical expertise, the prison's treatment director and warden could not be held liable for medical staff's diagnostic decision not to refer prisoner to doctor for treatment of a shoulder injury); McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977).

In the absence of defendants direct participation, or actual notice that Gaskins was suffering serious harm as a result of constitutionally inadequate mental health care, it is respectfully submitted that this Court cannot properly impose liability, much less damages, against these defendants.   Therefore, summary judgment should enter in defendants' favor because (1) Gaskins has failed to show, by submission of relevant medical evidence, that the treatment offered is inadequate, and (2) defendants have not acted with deliberate indifference.

## VI.    <u>THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY</u>.

Defendants are public officers, and are thus entitled to at least qualified immunity from a suit for damages in their individual capacities.  The doctrine of qualified immunity was established to protect government officials from the burdens of vindictive and harassing lawsuits, which may inhibit them from properly exercising their powers, while, at the same time, protecting private citizens from oppressive or malicious government action.  <u>Knight v. Mills</u>, 836 F.2d 659, 665 (1st Cir. 1987) (citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 238 (1974).

The Supreme Court reasoned that, "officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages."  <u>Davis v. Scherer</u>, 468 U.S. 182, 195 (1984).  The official "is not expected to determine the manner in which the law's grey areas will be clarified and defined."  <u>Borucki v. Ryan</u>, 827 F.2d 836, 839 (1st Cir. 1987).  Officials will succeed in their defense "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated," <u>Anderson v. Creighton</u>, 483 U.S. 635, 646 (1987).  "[A] court must determine whether an alleged right was established with

sufficient particularity that a reasonable official could anticipate that his actions would violate that right." Borucki, supra at 383 (citing Anderson v. Creighton, supra at 646).

The Department of Correction defendants are not medical doctors, nor does the plaintiff allege that they are. As such, they are entitled to rely on the professional judgment of medical providers. Layne v. Vinzant, 657 F.2d 468, 472 (1st Cir. 1981); Camberos v. Branstad, 73 F.3d 174 (1995) (because they lacked medical expertise, the prison's treatment director and warden could not be held liable for medical staff's diagnostic decision to refer prisoner to doctor for treatment of a shoulder injury); McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977). Accordingly, plaintiff's Complaint must be dismissed in its entirety.

## CONCLUSION

For the aforementioned reasons, the defendants David Nolan, Lisa Mitchell and Susan Martin are entitled to dismissal of the plaintiff's Complaint in its entirety. In the alternative, summary judgment should be granted in their favor.

Dated: July 27, 2005                    Respectfully submitted,

NANCY ANKERS WHITE
Special Assistant Attorney General

/s/ Jody T. Adams
_____
Jody T. Adams, Counsel
BBO No. 633795
Department of Correction
Legal Division
70 Franklin Street, Suite 600
Boston, MA 02110-1300
(617) 727-3300 x169

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date a true copy of the above document was served on plaintiff (pro se) via first class mail.


Dated: 7/27/05

/s/ Jody T. Adams
_____
Jody T. Adams, Counsel

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TONY B. GASKINS                          CIVIL ACTION NO. 05-CV-10858-GAO

       Plaintiff,

vs.

UMASS CORRECTIONAL
HEALTH SERVICES, ET AL.

       Defendants.

**AFFIDAVIT OF SUSAN J. MARTIN**

I, Susan J. Martin, hereby depose and say:

1.     I am the Director of Health Services for the Department of Correction

("Department"), and I have held this position since October 2002.  Prior to becoming

Director of Health Services, I was the Acting Director of Health Services from March

2002 to October 2002.  Prior to that time, I was the Deputy Director of Health Services

from 1997 to March 2002.  My business address is 15 Administration Road, Bridgewater,

Massachusetts 02324.  The information contained in this affidavit is based upon my

personal knowledge and is true and complete to the best of my knowledge.

2.     The Department contracts with a private health services contractor to

provide medical, mental health and dental services to prisoners incarcerated at

Department of Correction facilities.

3.     Since January 1, 2003, University of Massachusetts Medical School

("UMMS") has been the Department's health services contractor.  In order to ensure that

all health care decisions are made by qualified medical, mental health and dental

professionals, the Department's contract with UMMS likewise provides in pertinent part

that:

> [t]he Contractor shall be solely responsible for making all decisions with respect
> to the type, timing and level of services needed by Inmates covered by the
> program, including, without limitation, the determination of whether an inmate is
> in need of clinic care, hospitalization, admission to a clinic, referral to an outside
> specialist or otherwise needs specialized care.

4.    The principle that medical professionals should exercise independent

professional judgment is memorialized in the Department of Correction Health policy

governing clinical contract personnel and the role of the Department of Correction Health

Services Division, 103 DOC 610.00 *et seq.* Section 610.01 provides in pertinent part:

> Matters of medical, mental health and dental judgment are the sole province of the
> responsible physicians, psychiatrists or dentists.

5.    Neither I, nor any Department employee, including Superintendent Nolan

or Deputy Superintendent Lisa Mitchell had any direction or control over UMMS and its

employees in the manner in which UMMS medical professionals determined the

appropriate medical or mental health treatment for prisoners.

6.    I am aware that in the case at bar, plaintiff Tony Gaskins alleges that he

received inadequate care following surgery on his shoulder in December 2004. Any

decisions about plaintiff's medical care and the appropriate course of treatment are

matters that required the professional medical judgment of UMMS staff. Moreover, it

has always been the sole responsibility of contractual medical staff to order and provide

prescribed medications to prisoners. Therefore, the decisions regarding plaintiff's

medications, the responsibility of ordering the plaintiff's medications, and all decisions

concerning the type and timing of the plaintiff's medical care are decisions solely within

the province of UMMS today.

2

7.     UMMS staff members are not Department employees, and they are not represented in litigation by Department attorneys.  In the event of litigation, UMMS retains private counsel to represent UMMS and its employees.

8.     I received a copy of a letter from Massachusetts Correctional Legal Services paralegal Laura Anderson, dated March 11, 2005, attached, inquiring about Mr. Gaskins' physical therapy.  I also received a copy of the response to Ms. Anderson from Health Services Administrator Stanley Galas, dated April 4, 2005, also attached.  In his letter, Mr. Galas informed Ms. Anderson that Mr. Gaskins had been scheduled for physical therapy and that he would continue to be monitored by the Health Services Unit.

9.     The attached medical records reflect that Mr. Gaskins has received ongoing treatment and physical therapy for his shoulder.

Subscribed under the pains and penalties of perjury this _14th_ day of July 2005.


Susan J. Martin
Director of Health Services

3

06/28/2005 TUE 15:05  FAX 508 279 8854 DOC HEALTH SERVICES +++ DOC LEGAL          @006/007

## Massachusetts Correctional Legal Services
Eight Winter Street, Boston MA 02108-4705
(617) 482-2773
Toll Free (800) 882-1413
Collect Calls (617) 482-4124
Fax (617) 451-6383

March 11, 2005

Stan Galas, Health Services Administrator
MCI-Cedar Junction
P.O. Box 100
South Walpole, MA 02071

Re: Tony Gaskins (W-52145)

Dear Mr. Galas:

I am writing on behalf of Mr. Tony Gaskins who is currently incarcerated at MCI-Cedar Junction. Mr. Gaskins reports that he had surgery on his rotator cuff in early December and was supposed to start physical therapy as soon as the sling was removed, about two weeks after the operation. According to Mr. Gaskins, the DOC did not permit him to have the "Theraband" required for his PT and so alternate PT was supposed to be arranged, but was not. Apparently Mr. Gaskins has not had sufficient, if any, physical therapy since his December surgery.

Mr. Gaskins reports that he saw an orthopedic doctor yesterday who was very concerned that he has not had the opportunity to do any PT. According to Mr. Gaskins, the doctor said that because Mr. Gaskins has not been provided with PT, his shoulder muscle is not developing properly and may require additional surgery.

Please look into Mr. Gaskins' situation and ensure that he gets proper care for his shoulder, including physical therapy. If security concerns prohibit the use of suggested equipment, such as a Theraband, please arrange an alternate, effective physical therapy plan.

Mr. Galas, thank you for your time and attention to Mr. Gaskins' medical care. I will await your response.

Sincerely,

Laura Anderson
Paralegal

cc: Susan Martin, Director of DOC Health Services

LA/ps

DEPARTMENT OF CORRECTION

MAR 1 4 2005

HEALTH SERVICES DIVISION

logged 3-14

 University of
Massachusetts
Medical School

Stanley Galas, NP
Health Services Administrator
MCI Cedar Junction

Laura Anderson, Paralegal
MCLS

April 4, 2005

RE: Tony Gaskins

Dear Ms. Anderson,

I am responding to your letter, dated 3/11/05, where you are inquiring about Mr. Gaskin's physical therapy.

Physical therapy has been scheduled for Mr. Gaskins, as recommended by the orthopedic doctor.

The HSU will continue to monitor and treat Mr. Gaskins, as medically necessary.

Sincerely

Stanley Galas, HSA

CC: Susan Martin, Director of DOC Health Services

MCI Cedar Junction
PO Box 100
South Walpole, MA

# CORRECTIONAL MEDICAL SERVICES

## PROBLEM LIST

_CJ_
Institution

NAME: Gaskins, Tony    ID # W-52145    D.O.B. 7-16-67

MEDICATION ALLERGIES: NKA    Rotglen (10/10/94) Reglan Of

| Date Identified | Chronic (Long Term) Problems | Healthcare Practitioner Signature | Date Resolved | Healthcare Practitioner Signature |
|---|---|---|---|---|
| 7/92 | Asthma | | | |
| | D'cd CD list 6-10-96 | | | |
| 8/4/96 | Calcific Tendonitis both shoulders | | | |
| 1-19-00 | Chronic ® Shoulder pain  K Lewdry ANP | | | |
| 8-31-00 | asthma - restart CD  N V rivers | | | |
| 11-13-01 | Refused Influenza + Pneumococcal Vac | | | R Bavaro M |
| 10-20-02 | Refused Influ Vaccine | | | R Bavaro |
| 2/19/03 | D/C Asthma CD  Kendary NP | D/C 2/19/03 | |
| 11/19/03 | Flu Vaccine Given In | | | |
| 12/1/14 | Pre-op PE  Lyons NPC | | | |
| 12/04 | S/P ® Shoulder arthroscopy | | | |
| | A complete & usedn | | | |
| 1/18/05 | Intermittent | | | |
| 1/18/05 | Asthma  C Singletary MD | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

# UMASS CORRECTIONAL HEALTH

### PROGRESS NOTES

Institution

NAME: _Tony Haskins_    ID # W52145    D.O.B. 7/16/1967

| DATE | TIME | NOTES |
|------|------|-------|
| 12/16 | 7-3 | Dsg Δ to ® shoulder. Area surrounding staples cleaned DSD applied. No redness, Ø drainage, Ø edema, Ø s/sx d infection. Ø complaints voiced ——— _signature_ |
| 12/18/01 | 3-11 | Dsg Δ + ® Shoulder — Area appears clean Ø drainage. healing well. No % inmate refused to have staples removed signed Refusal — wants M.D. to remove Monday — Ø s/sx of infection — _signature_ RN |
| 12/19/01 | 3-11 | Dsg Δ + ® Shoulder — area appears to have healed. Ø drainage noted. no % Ø redness — Area cleaned DSD applied. took pain med as ordered — _signature_ |
| 12/2/0? | 8p | Dsg Δ + ® shoulder. Ø s/sx of infection. Ø drainage noted. Ø redness or c/o. Area cleaned c̄ sterile saline. DSD applied. I/m refused pain med. Ø ——— _signature_ |

7113W 1/65

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

CJ
Institution

NAME: Gaskins, Tony    ID# W52145    D.O.B. 7/16/67

| DATE | TIME | NOTES |
|------|------|-------|
| 12/14/ | 1830p | dsg change completed, I/m c/o itching in anterior section of staples. Ø A/sx of infections noted, Ø drainage from any of 3 sections. Area cleaned, DSD applied. M Kennedy, RN |
| 12/15/4 | 1500 | CC: pt cc to family and deputy super that he felt his pain was being poorly controlled. He offers Ø other complaints c̄ request for soft restraint of post-surgical arm |
|  |  | O: WDWN NAD pain worst has been a 6 s̄ improvement c̄ Naprosyn + APAP. DSD removed, staples intact, Ø erythemia, wound well-approximated, sling in place, minor finger edema, fingers w+D, sensation good, color pink c̄ cap refill < 3 secs. radial/ulnar pulse strong |
|  |  | A: S/P Ⓛ arthroscopy |
|  |  | P: ① Ultram to titrate ↓ over 10 days, cont APAP, Motrin added, Naprosyn D/c'd |
|  |  | ② Ⓡ Arm- MR |
|  |  | ③ F/u c̄ me for staple removal on 12/20 |
|  |  | ④ sling until ortho (LSH) removes K Stout, NP-C |
|  |  | Kathy J. Stout, NP-C<br>Adult Nurse Practitioner |

7113W 1/05

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

OCI CJ
Institution

NAME: _Graybeau Tony_  ID # _W60145_  D.O.B. _7/16/63_

| DATE | TIME | NOTES |
|------|------|-------|
| 12/9/04 9:30a | | S S/P (R) shoulder arthroscopy 12/8/04. In HSU overnight. States arm "throbbing a little" but feels OK — had nausea yesterday post-methood but OK now. Vs Temp 98.6 P 80 R 18 BP 130/82. Dressing clean + dry 5 bleeding noted through dsg. A: S/P (R) shoulder arthroscopy P: Remain in HSU until this afternoon, then return to unit. D/C Tx after next dose (10 a AM) Tylenol 975 mg po qid prn X 10 days (may take c Naprosyn) Dressing to remain intact X 5 days see orders of 12/8/04 — Shira Porter RN 9:30 |
| 12/13/04 10:00a | | first dsg change since surgery. Staples intact, clean, Ø swelling or redness, mild serosang. drainage (old) on gauze pads. area cleaned, DSD applied c non-adherent pads + gauze. I/m c/o mild discomfort, pain med orders current. medically cleared — M Kennedy RN |

7113W 1/95

**UMASS CORRECTIONAL HEALTH**
**SICK CALL REQUEST FORM**

Print Name: _Tony Barkins_          ID#: _W52148_

Date/Time _11/28/04_          Housing Location: _Ten/_

Check **ONLY** One Box:          ☑ Medical    ☐ Dental    ☐ Mental Health

Nature of problem or request: _I have a cyst on my right shoulder that_
_needs to be drained. (Second request)._

I consent to be treated by the healthcare staff for the condition described above.

Inmate Signature _Tony Barkins_

**PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA**
**DO NOT WRITE BELOW THIS AREA**
*******************************************************************************

| Date/Time Recieved | |
|---|---|

REFERED TO:

Institution _____        ☐ Nurse    ☐ Midlevel    ☐ Physician

_____        ☐ Mental Health    ☐ Dental    ☐ Other _____
Slip Sorted by:

*******************************************************************************

Subjective:

Objective:  T _____  P _____  R _____  B/P _____

See
12/1

Assessment:                    VS

Plan [include inmate education]:

Signature & Title: _____  Date: _____  Time: _____
8022 Rev. 4/01

**UMASS CORRECTIONAL HEALTH**
SICK CALL REQUEST FORM

Print Name: _Tony Gaskins_    ID#: _W52145_

Date/Time _3/28/05_    Housing Location: _DDU/C2-#68_

Check **ONLY** One Box:    ☒ Medical    ☐ Dental    ☐ Mental Health

Nature of problem or request: _I filed a grievance on this matter_
_about my shoulder, and this is my "third" sick slip_
_I have put in about it. I need to be seen!_

I consent to be treated by the healthcare staff for the condition described above.

Inmate Signature _Tony Gaskins_

**PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA**
**DO NOT WRITE BELOW THIS AREA**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| Date/Time Recieved | | REFERED TO: |
|---|---|---|
| 3/29/05  1¹⁰ pm | Institution _____ | ☐ Nurse   ☒ Midlevel   ☐ Physician |
| | Slip Sorted by: _____ | ☐ Mental Health   ☐ Dental   ☐ Other ____ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Subjective: c/o chronic ® shoulder pain since 12/8/04 S/P arthroscopy + acromioplasty + resection of distal clavicle + removal of screws. att. left OT but doc would extern band in 90L, reports someone ret. in jer. pt x 2, reports Ultram helped c̄ pain, duties need for other analgesics. Inq. restriction to have only waist chains. reg. acne med (erythromycin)

Objective: T _____ P _____ R _____ B/P _____
① ® shoulder. ⊘ gross deformity. ⊘ swelling. ⊘ collor. ~ 2" scar ⊕. ⊘ on AC joint area- healed. limited ROM. ⊕ tenderness.

② ⑤ cheeks + chin c̄ raised papules approx. < 1cm. ⊘ pustules. discrete.

Assessment: ① ® shoulder pain 2° to arthroscopy + acromioplasty
② acne

Plan [include inmate education]:  ① consult completed by NP previously
② refer to PT - sheet completed
③ erythromycin 2% topical sol'n apply BID PRN- acne x 100 days. KOP
④ restriction form filled - for waistchains only
⑤ RTC PRN

Signature & Title: _Anthony, ACNP_   Date: _3/29/05_   Time: _1415_

8022 Rev. 4/01

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

Institution

NAME: _Hoskins, Troy_    ID # _W56145_    D.O.B. _7/16/67_

| DATE | TIME | NOTES |
|------|------|-------|
| 4/25/05 | | ~ Physical Therapy ~ |
| | | S: "My shld. feels stiff today. I have pain." |
| | | O: Rx cont. c̄ UBE x 10" ō max resistance · US |
| | | @ 1.5 w/cm² cont. x 5" to R shld. c̄ pt. sitting |
| | | thru ex. c̄ 7# cap strength is poor: √, √, ints. |
| | | all x 10 reps. |
| | | A: Rx tol well. Pt. tol ut. c̄ difficulty. Pt. advised |
| | | to avoid: lats, flies, dips, push ups, biceps |
| | | Pt. c/o R shld. pain c̄ daily act. |
| | | P: Cont. |
| | | Flu booked for 5/13/05 9am ✓ |

CARL SINGLETARY, M.D.

APR 28 2005

7113W 1/86

(47)

## UMASS CORRECTIONAL HEALTH
### SICK CALL REQUEST FORM

Print Name: _Tony Gaskins_    ID# _W52145_

Date/Time _4/28/05_    Housing Location _DDU_

Check **ONLY** One Box:    ☒ Medical    [ ] Dental    [ ] Mental Health

Nature of problem or request: _My right shoulder is in a lot of_
_pain. I don't want to see anyone who can't prescribe_
_me pain medication. I only want to see the Doctor._

I consent to be treated by the healthcare staff for the condition described above.

Inmate Signature _Tony Gaskins_

PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA
**DO NOT WRITE BELOW THIS AREA**

Date/Time Received _4/28/06 1PM_

**MCI CEDAR JUNCTION HEALTH SERVICE UNIT**

REFERRED TO:
[ ] Nurse    [ ] Midlevel    ☒ Physician
[ ] Mental Health    [ ] Dental    [ ] Other

Slip Sorted by: _____

Subjective: S/O s/p ® shoulder arthroscopy 02/04, 1 no I PT
PR & c/o ® shoulder pain. Denies recent

Objective: T ___ P ___ R ___ B/P ___   #171#
trauma or strain. No other c/os, s/ss x dry
skin c pruitis causing severe scratchy.
wounds. ® shoulder & gross deformity. stand 2°
pain. NT & T calor. Skin @ ichthyosis b/c c.e.

Assessment:
A/P # ® shoulder pain as above will Rx
c APAP prn. At mobile & tolerate
NSAIDS 2° GI & cardiac. If need
↑ analgesia, consider NSAIDs c taken
N tolerate or is PT mobilize.

Plan [include inmate education]:
# xerosis c ichthyosis as above. Rx c
emollient & lotion.    Date: _5/4 ___

Signature & Title: _____

6022 Rev. 4/01

1050 pm  CARL SINGLETARY, M.D.
MAY 04 2005

**UMASS CORRECTIONAL HEALTH**

PROGRESS NOTES

_Institution_

NAME: _Shekins, Tray_ ID # _W56145_ D.O.B. ___

| DATE | TIME | NOTES |
|------|------|-------|
| 4/25/05 | | Physical Therapy |
| | | S: "My shldr. feels stiff today. I have pain." |
| | | O: Rx cont. c̄ UBE x 10' c̄ max resistance. US |
| | | @ 1.5 w/cm² cont. x 5" to ® shldr. c̄ pt sitting |
| | | ther. ex. c̄ 7# scap strengs in prone: √, ⊥, rets. |
| | | all x 10 reps. |
| | | A: Rx tol well. Pt. tol wt. c̄ difficulty. Pt. advised |
| | | to avoid: lats, flies, dips, push ups, bench |
| | | Pt. c/o ® shldr. pain c̄ daily act. |
| | | P: Cont. _[signature]_ |
| 5/3/05 | | S: "My shldr. feels stiff. It hurts a little." |
| | | O: Rx cont. c̄ US @ 1.5 w/cm² cont. x 5" to ® shldr. c̄ |
| | | pt. sitting; UBE x 10' c̄ max resistance; ther. ex. |
| | | c̄ 10# scap strengthening in prone: √, ⊥, rets., Ⓛ |
| | | sidelying ® ER all ex. x 10 reps. |
| | | A: Rx tol well. Pt. c/o shldr. pain, however is not |
| | | limiting his daily act. Pt. tol wt. c̄ difficulty. |
| | | Pt. progressing well c̄ P.T. Pt. @HEP. all sTG's |
| | | met. Pt. working towards LTG. |
| | | P: Cont. _[signature]_ |
| | | F/U 6/6/05 9 Am Ⓟ |

CARL SINGLETARY, M.D.

MAY 2 0 2005

7115W 1/85

UMASS CORRECTIONAL HEALTH

**PHYSICIAN'S ORDER**

PRESCRIPTION ORDER - FOR DEPARTMENT OF CORRECTION INSTITUTIONAL USE ONLY

NAME _Tony Gaskins_     ID NUMBER _W52145_     D.O.B. _7/16/1967_

INSTITUTION _MCI-CJ_     ALLERGIES ~~NKD#~~ _Reglan_

DATE _12/8/2004_     TIME _1400_

<u>ORDERS</u>

① Admit HHSU S/P ® shoulder arthroscopy

② VS QS, Notify MD if BP >160 < 50  HR > 110 <60
   RR > 28 < 10 , (T) > 101.5 F until D/c from HSU

③ Tylenol #3 ī po q4 hours prn pain x 72°

④ Naprosyn 500 mg po q12° X 10 days

⑤ Sling ® shoulder until LSH clears in F/u

⑥ Keep dsng dry Δ in 5 days DSD

⑦ Remove staples 10 days

⑧ ∅ cuffs ® Arm x 22 days

⑨ after 5 days dsng Δ, Δ qd X 10 days

Noted 12/8/04 @ 2⁰⁵ᵖ

SIGNATURE _Kathy Stone, NP-C_

PRINT NAME _Kathy Stone, NP-C_

Interchange is mandatory unless the prescriber writes the words
"no substitution" in this space:

8006 Rev. 4/01

Original (White): Retain in Inmate Medical Record
Copy (Yellow): Fax to Pharmacy; File with Pharmacy Orders

MASS CORRECTIONAL HEALTH

PHYSICIAN'S ORDER

PRESCRIPTION ORDER - FOR DEPARTMENT OF CORRECTION INSTITUTIONAL USE ONLY

NAME _GASKINS, TOM_    ID NUMBER _W52145_    D.O.B. _7/16/67_

INSTITUTION _MCC-CJ_    ALLERGIES _Rubras_

DATE _(See below)_

ORDERS

R/W ACYCLOVIR 400, TO BID x 90 DAYS _(2x/day)_

_Noted ____ 5/25/05 10AM_

SIGNATURE _CARL SINGLETARY, M.D._

MAY 2 5 2005

PRINT NAME _940m_

Interchange is mandatory unless the prescriber writes the words
"no substitution" in this space:

8006 Rev. 4/01

Original (White):  Retain in Inmate Medical Record
Copy (Yellow):  Fax to Pharmacy; File with Pharmacy Orders

MASS CORRECTIONAL HEALTH

**PHYSICIAN'S ORDER**

PRESCRIPTION ORDER - FOR DEPARTMENT OF CORRECTION INSTITUTIONAL USE ONLY

NAME _Goskins, Tony_    ID NUMBER _W52145_  D.O.B. _7/16/67_

INSTITUTION _MCI-CJ/ODU_    ALLERGIES _Reglan_

DATE _(See below_  TIME _____

ORDERS

(1) Acetaminophen 975mg PO 3X/day prn
shoulder pain x 90 days

(2) Emollient skin lotion - apply to affected
area of dry skin 3X/week after
shower x 10 days

_____ 3/1/16 3pm

SIGNATURE _CARL SINGLETARY, M.D._

MAY 0 4 2005

PRINT NAME

10:40 am

Interchange is mandatory unless the prescriber writes the words
"no substitution" in this space:

8006 Rev. 4/01

Original (White): Retain in Inmate Medical Record
Copy (Yellow): Fax to Pharmacy: File with Pharmacy Orders

### MASS CORRECTIONAL HEALTH
#### PHYSICIAN'S ORDER

PRESCRIPTION ORDER - FOR DEPARTMENT OF CORRECTION INSTITUTIONAL USE ONLY

NAME _Gaskins, Tony_ ID NUMBER _W52145_ D.O.B. _7/16/67_

INSTITUTION _MCI - CJ_ ALLERGIES _Reglan_

DATE _4/19/05_ TIME _11 AM_

ORDERS

R/w Albuterol MDI 2 puffs QID/prn x 90 Days

_Noted_
_Nurse's_
_4/19/05 11:10 A_

SIGNATURE _CARL SINGLETARY, M.D._
APR 1 9 2005

PRINT NAME _____

Interchange is mandatory unless the prescriber writes the words "no substitution" in this space:

8006 Rev. 4/01

Original (White): Retain in Inmate Medical Record
Copy (Yellow): Fax to Pharmacy; File with Pharmacy Orders

# MASS CORRECTIONAL HEALTH

## PHYSICIAN'S ORDER

### PRESCRIPTION ORDER - FOR DEPARTMENT OF CORRECTION INSTITUTIONAL USE ONLY

NAME _Gasline, Tony_   ID NUMBER _W52145_   D.O.B. _7/16/67_

INSTITUTION _ODU_   ALLERGIES _Reglan_

DATE _3/29/05_   TIME _1440_

ORDERS

① erythromycin 2% topical sol'n apply to affected
area 2x/day PRN - acne x 100 days KOP
② restriction form completed - NO cuffs
behind back - Only apply waist chains
③ refer to PT - sheet completed

_[signature]_ 3/29/05 3PM

SIGNATURE _[signature]_

PRINT NAME _JOHN J. WONG, ACNP_

Interchange is mandatory unless the prescriber writes the words
"no substitution" in this space:

8006 Rev. 4/01

Original (White):  Retain in Inmate Medical Record
Copy (Yellow):  Fax to Pharmacy; File with Pharmacy Orders

U*MASS* C*ORRECTIONAL* H*EALTH*

**PHYSICIAN'S ORDER**

PRESCRIPTION ORDER - FOR DEPARTMENT OF CORRECTION INSTITUTIONAL USE ONLY

NAME *Gaskins Tony*    ID NUMBER *W53146*    D.O.B. *7/16/67*

INSTITUTION *MCI CJ*    ALLERGIES *Reglon*

DATE *2/10/05*    TIME *300 PM*

ORDERS

*Acyclovir 400 mg po 2x day X 100 days*

*Noted 2/10/05 8P MKennedy RN*

SIGNATURE *Sheila Porter NP*    Interchange is mandatory unless the prescriber writes the words
"no substitution" in this space:

PRINT NAME    **SHEILA PORTER, N.P.**

FEB 1 0 2005

8006 Rev. 4/01    Original (White): Retain in Inmate Medical Record
Copy (Yellow): Fax to Pharmacy; File with Pharmacy Orders

## UMASS CORRECTIONAL HEALTH

### PHYSICIAN'S ORDER

PRESCRIPTION ORDER - FOR DEPARTMENT OF CORRECTION INSTITUTIONAL USE ONLY

NAME _Gaskins, Tony_    ID NUMBER _W52145_    D.O.B. _7/16/67_

INSTITUTION _MCI-CJ_    ALLERGIES _Reglan_

DATE _See below_    TIME _____

ORDERS

(1) Albuterol MDI I ⊤ puffs qid PRN - KOP x100 days

(2) Flu ⊤ N.P. for CD in 3 mos.

(3) F/u LSH ortho Clinic w/ Fake consult
request done

Noted _____ 1/8/05 11pm

SIGNATURE _____    CARL SINGLETARY, M.D.

JAN 1 8 2005

PRINT NAME _____

10:15pm

Interchange Is mandatory unless the prescriber writes the words "no substitution" in this space:

8006 Rev. 4/01

Original (White): Retain in Inmate Medical Record
Copy (Yellow): Fax to Pharmacy; File with Pharmacy Ord.

**UMASS CORRECTIONAL HEALTH**

**PHYSICIAN'S ORDER**

PRESCRIPTION ORDER - FOR DEPARTMENT OF CORRECTION INSTITUTIONAL USE ONLY

NAME _Tony Gaskins_  ID NUMBER _W52145_  D.O.B. _2/16/1967_

INSTITUTION _Mu-CJ_  ALLERGIES _reglan_

DATE _12/15/04_  TIME _1200_

ORDERS

① ultram 100 mg po TID X5 days, then ↓ ✓

   ultram 50 mg po TID X3 days, then ↓ ✓

   ultram 50 mg po BID X2 days, then DIC ✓

② cont APAP, ✓ DIC Naprosyn ✓

③ Motrin 600 mg po TID X 30 days prn ✓
   arm pain.

④ soft cuff only to ℝ hand - medical
   restriction form completed  KS

⑤ please have patient see me on 12/20/04 for F/u
   (have staple remover available) ✓

   noted 12/20/04 515P PPember...

SIGNATURE _Kathy Stout, NPC_

Interchange is mandatory unless the prescriber writes the words
"no substitution" in this space:

PRINT NAME _Kathy Stout NPC_

8006 Rev. 4/01

Original (White): Retain in Inmate Medical Record
Copy (Yellow): Fax to Pharmacy: File with Pharmacy Orders

UMASS CORRECTIONAL HEALTH

PHYSICIAN'S ORDER

PRESCRIPTION ORDER - FOR DEPARTMENT OF CORRECTION INSTITUTIONAL USE ONLY

NAME _Gardenier Tony_ ID NUMBER _W50145_ D.O.B. _7/16/63_

INSTITUTION _MCI CJ_ ALLERGIES _AKA pafin_

DATE _12/9/04_ TIME _11 AM_

ORDERS

D/c from HHSU after 3 PM 12/9/04

D/c Tₓ c̄ d/c from HHSU

Tylenol 975 mg po qid prn X 10 days

(may take c̄ Naproxyn)

noted 12/9/04 3ᵖ M Kennedy RN

SIGNATURE _Sheila Porter RN C NP_

Interchange is mandatory unless the prescriber writes the words "no substitution" in this space:

PRINT NAME _SHEILA PORTER, N.P._ 10 AM

DEC 0 9 2004

8006 Rev. 4/01

Original (White): Retain in Inmate Medical Record
Copy (Yellow): Fax to Pharmacy: File with Pharmacy Orders

UMASS CORRECTIONAL HEALTH

**PHYSICIAN'S ORDER**

PRESCRIPTION ORDER - FOR DEPARTMENT OF CORRECTION INSTITUTIONAL USE ONLY

NAME _Gaskins, Tony_    ID NUMBER _W52145_    D.O.B. _7-16-67_

INSTITUTION _MCI-CJ_    ALLERGIES _Reglan_

DATE _12/01/04_    TIME _1900_

ORDERS

NPO p̄ midnight 12/8/04
Stop all NSAIDS + ASA 11/30 → 12/8/04
CBC c̄ diff, LFT's, PT, PTT ← blood drawn
by me 2 ks

Noted 12/1/04 @ 10pm

SIGNATURE _Kathy Stout, NP-C_    Interchange is mandatory unless the prescriber writes the words "no substitution" in this space:

PRINT NAME    **Kathy J. Stout, NP-C**
**Adult Nurse Practitioner**

8006 Rev. 4/01    Original (White): Retain in Inmate Medical Record
Copy (Yellow): Fax to Pharmacy; File with Pharmacy Orders

PHYSICAL THERAPY EVALUATION     Patient Name: Gard_ns, Kay     WS2145

**DIAGNOSIS**     Date:

Pertinent Hx.

P.M.H.

Social / Occupational Hx.

Precautions

| STRENGTH & R.O.M. | | RIGHT | | LEFT | | COMMENTS |
|---|---|---|---|---|---|---|
| | | STR | AROMP | STR | AROMP | |
| SHLD. | Flexion 0-180 | 35 | wk * | | | * pain at end ROM |
| | Extension 0-50 | 35 | wk | | | |
| | Abduct. 0-160 | 35 | wn * | | | |
| | In. Rot. 0-70 | 35 | wn * | | | |
| | Ex. Rot. 0-90 | 85 | wn * | | | |
| ELBOW | Flexion 0-145 | 45 | wk | | | |
| | Extension 0-0 | 45 | | | | |
| FOREARM | Pronat. 0-85 | | | | | |
| | Supin. 0-85 | | | | | |
| WRIST | Flexion 0-70 | | | | | |
| | Extension 0-0 | | | | | |
| GRASP | | | | | | |
| HIP | St. Leg Raise 0-80 | | | | | |
| | Flexion 0-120 | | | | | |
| | Extension 0-25 | | | | | |
| | Abduct. 0-45 | | | | | |
| | Adduct. 0-30 | | | | | |
| | In. Rot. 0-45 | | | | | |
| | Ex. Rot. 0-45 | | | | | |
| KNEE | Flexion 0-135 | | | | | |
| | Extension 0-0 | | | | | |
| ANKLE | Dorsiflex 0-20 | | | | | |
| | Plantarflex 0-50 | | | | | |
| | Invers. 0-35 | | | | | |
| | Everion 0-20 | | | | | |

**ACTIVE MOVEMENTS**

Restricted        J
Blocked          | |
Pain/Restr.      x
Hypermobile    ∧∧∧



**TRUNK**     Mobility
               Strength
               Posture

| SPECIAL TESTS | | (L) | | (R) | |
|---|---|---|---|---|---|
| | PA | ROT | SB | ROT | |
| | SB | ROT | SB | ROT | |
| PAIN: (0-10) | PA | ROT | SB | ROT | |
| | SB | ROT | SB | ROT | |
| PALPATION: | PA | ROT | SB | ROT | |
| | SB | ROT | SB | ROT | |
| | PA | ROT | SB | ROT | |
| | SB | ROT | SB | ROT | |

CARL SINGLETARY, M.D.

APR 2 5 2005

Gaddis, Terry

**GAIT:**

NO

**CARDIO-PULMONARY**

**SENSATION / SKIN**

pt denies impairment

**OTHER:**

**ASSESSMENT:** Pt is a 34 yo male ar. c (R) shoulder arthroscopy acromioplasty c resection of distal clavicle & removal of mass. Pt is a good candidate for PT c good rehab potential

**HEP / EDUCATION:** Today's RX:

Estim

LBP x tension { Sflexed / Seated }  > Pt provided c instruction & handouts

4x PRE's

cane ex

**Problem List:**
1. ↑ pain
2. ↑ function
3. ↓ ROM - pain
4. ↓ MMT
5.
6.
7.

**STG:** Achieved in 1, 2, 3, (4 weeks)
1. ↓ pain to intermitt
2. ↑ ROM to WFL pain free
3. ↑ MMT by ½ MMT grade
4. (I) thru ex program
5.
6.
7.

**LTG.** Achieved in 2, 4, 6, 8, 8+ weeks
Min pain / max function

**PATIENT / THERAPIST TREATMENT**
Plan: 1, 2, 3, 4 times/week          1, 2, 3, 4 weeks          Per RX

PT 2-4x/mos for ther ex, modals as needed/indicated
US, HP/CP etc.
F/U booked for 4/25/05 9 am

CARL SINGLETARY, M.D.

APR 2 5 2005

Date          Signature & Title

4-5-05
Date          Signature & Title



**Lemuel Shattuck Hospital**
**170 Morton Street**
**Jamaica Plain, MA  02130**

**LSH ORTHOPEDIC CONSULT. RPT**

**Date/Time of Report:** 04/14/05  1541
**Patient:** GASKINS,TONY
**Unit #:** LS00074799
**Acct #:** LS0001127240
**Ordering Doctor:** CONNOLLY, MARY PA
**Patient Location:** ORT.L
**Associated Orders:** ORTHOPEDIC CLINIC CONSUL LEV 3

Pt now receiving Physical Therapy for R shoulder. He demonstrates good understanding of
exercises and appears motivated.
I explained this will take some time to rebuild strength.
RTC 2-3 months if he still has complaints.

Call 617-971-3595 for appointment

**Signed by:**
**Dictated By:** CONNOLLY, MARY PA

**Co-Signed by:**
**Co-Dictated By:**

**Dictated Date:** 04/14/05

CARL SINGLETARY, M.D.

APR 2 8 2005

**Page: 1**

# 130225
4/5/05
9 AM
Send ortho notes

**UMASS CORRECTIONAL HEALTH**
**CONSULT**
PT / REHAB REFERRAL

Name: _TONY GASKINS_          Age: _34_  ID#: _W52145_

Referring MD: _STANLEY GALAS, NP_          Date: _3/17/05_

Diagnosis for which physical therapy recommended: _S/P ℝ SHOULDER_
_ARTHROSCOPY & E/O DISTAL CLAVICLE X 3 MOS_

Brief history of illness leading to need for rehabilitation including date of onsent: _____

_____

_____

**OBJECTIVE FINDINGS**
Neurological Orthopedic exam describing each functional impairment: _ATROPHY AT_
_THE SUPRASPINATUS AREA. ABDUCTION, FLEXION AGAINST RESISTANCE_
_VERY WEAK. ABILITY TO PUSH ℝ ARM FAIR COMPARED TO EXCELLENT_
_ON Ⓛ_
Specific functional goals / endpoints to be expected from therapy: _NEEDS PT FOR_
_MUSCLE STRENGTHENING 2X/WEEK_

_____

Specific therapy plans and / or orders directed towards reaching each goal: _____↗_
_MUSCLE STRENGTHENING ℝ ↑ EXTREMITY_

_____

_____

End point defining discharge readiness: _____

_____

PT Evaluation / Progress and Recommendations: _____

_____

_____

_____

_____

8053 10/97

UMass Correctional Health Program - DRAFT 12.16.2002

**Consultation Request**

① PT 4/5/05 9am
# 130225

② Ortho 4/14/05 1:00 pm
# 130928

o Off-Site    (Check Those That Apply)
o Emergency    o Specialty Clinic    o Ambulance    Reference Number:
o On-Site    o On-Site Clinic

Inmate: _Dasbane Tony_    Inmate ID: _W52148_    DOB: _7/16/63_

Facility: _4CICJ DR_    Cost Center: _____    Incarceration Date: _END Life_

Procedure/Test/Specialty Requested: (1) PT- muscle strengthening (2) Staley Med PT
(2) F/U Ortho    Provider: SH Ortho / Dr Cardle

**Presumed Diagnosis:**    ICD Code:
S/P R shoulder arthroscopy

**Subjective Symptomatology:**
Hx acromioplasty & resection of distal clavicle &
removal of ballal moon 12/8/04

**Exam Data:**
see clinic report of 3/10/05

**Laboratory & X-Ray Data**
N/A

**Current Medication / Failed Outpatient Therapies:**
Albuterol MDI
Cephlexin 400 bid

**Other Diagnoses / Alerts:**
asthma

**Expectation from Approved Procedure:**
↓ pain, improved ROM

**Comments:**

Referring Clinician: _S Porter NP_    Signature: _Alicia Porter RN_    Date: _3/29/05_
                                                                        NP
If Applicable    CARL SINGLETARY, M.D.    Signature: _____    Date: _____
State-Wide Medical Director:    MAR 2 9 2005

Utilization Review: Method of Application:
o M & R    o InterQual    o Saunders    o Other
o Criteria Met    o Criteria Not Met    o More Info Requested
Initials: _____    Date: _____    BA 4/6/05

* For security reasons, inmates must NOT be informed of date, time, or location of proposed treatment or possible hospitalization

**Lemuel Shattuck HOSPITAL**

**Physician Appointment Scheduler**

```
LS0001046960      LS00074799
GASKINS,TONY      07/16/1967
(508)668-2100     ORT.L M
UMASS CORRECTI
```

Disposition: _RTC - 4 weeks — pls call (617) 971-3595_
_to book_

Please stop by the Appointment Desk in Patient Registration to book the following appointments:

Clinic: _Ortho_                    Physician: _Carriew_

(Referring Institutions please note: call Appointment Desk to verify date and time prior
to appointment. Authorizations are required.)

**Lemuel Shattuck Hospital**
**170 Morton Street**
**Jamaica Plain, MA 02130**

### LSH ORTHOPEDIC CONSULT. RPT

**Date/Time of Report:** 03/10/05  1510
**Patient:** GASKINS,TONY
**Unit #:** LS00074799
**Acct #:** LS0001046960
**Ordering Doctor:** CARRILLO, ADRIANA MD
**Patient Location:** ORT.L
**Associated Orders:** ORTHOPEDIC CLINIC EST PT LEV 3

Pt is now 3 months post R shoulder scope and E/O distal clavicle.
He is able to perform full ROM but remains very weak.

PE:Atrophy at the supraspinatus area continues
    Abduction, flexion against resistance are very weak.
    Ability to push the arm forward is fair compared to excellent on the L

Pt needs Physical Therapy for muscle strengthening or he will injure another area as he
attempts to compensate. I understand he is in segregation and cannot have the Theraband
so please send in for therapy 2X/week.

RTC 4 weeks-call 617-971-3595 for appointment

**Signed by:**
**Dictated By:** CONNOLLY, MARY PA

**Co-Signed by:**
**Co-Dictated By:**

**Dictated Date:** 03/10/05

CARL SINGLETARY, M.D.

MAR 2 9 2005

Page 1

UMass Correctional Health Program - DRA(  )- 12.16.2002

## Consultation Request

X Off-Site    (Check Those That Apply)

Reference Number: 130225

o Emergency    X Specialty Clinic    o Ambulance

4-5-05  9am

o On-Site    o On-Site Clinic

Inmate: _Gaskins, Tony_    Inmate ID: _W52145_    DOB: _7/6/67_

Facility: _DDU_    Cost Center: _____    Incarceration Date: _____

Procedure/Test/Specialty Requested: _PT_    Provider: _____

**Treatment Diagnosis:**    **ICD Code:**

s/p arthroscopy + acromioplasty + resection of distal clavicle

**Description Symptoms/Meds:**

(R) shoulder pain s/p surgery

**Exam Data:**

(R) shoulder. ⊘ gross deformity. ⊘ swelling. ⊘ callor. ~ 2" scar on ac joint area. healed. limited ROM. ⊘ tenderness. (R) arthroscopy + acromioplasty + resection of distal clavicle + removal of mass

**Laboratory & X-Ray Data:**

**Current Medication / Failed Outpatient Therapies:**

**Other Diagnoses / Alerts:**

**Expectation from Approved Procedure:**

**Comments:**

Referring Clinician: **JOHN J. WONG, ACNP**    Signature: _____ ACNP    Date: _3/29/05_

If Applicable
State-Wide Medical Director: _____    Signature: _____    Date: _____

Utilization Review Verdict (If Applicable):
o M & R    o InterQual    o Saunders    o Other
o Criteria Met    o Criteria Not Met    o More Info Requested
Initials: _____    Date: _____

* For security reasons, inmates must NOT be informed of date, time, or location of proposed treatment or possible hospitalization

**Lemuel Shattuck**
HOSPITAL

## Physician Appointment Scheduler

```
LS0001017037     LS00074799
GASKINS,TONY     07/16/1967
(508)668-2100    ORT.L  M
UMASS CORRECTI
```

Disposition: _Nte - 4 weeks_

Please stop by the Appointment Desk in Patient Registration to book the following appointments:

Clinic: _Ortho_          Physician: _Carrula_

(Referring Institutions please note: call Appointment Desk to verify date and time prior
to appointment. Authorizations are required.)



**Lemuel Shattuck Hospital**
**170 Morton Street**
**Jamaica Plain, MA  02130**

**LSH ORTHOPEDIC CONSULT. RPT**

**Date/Time of Report:** 01/10/05  1031
**Patient:** GASKINS,TONY
**Unit #:** LS00074799
**Acct #:** LS0001017037
**Ordering Doctor:** CARRILLO, ADRIANA MD
**Patient Location:** ORT.L
**Associated Orders:** ORTHOPEDIC CLINIC EST PT LEV 3

Mr Gaskins comes today for a follow up after right shoulder arthroscopy acromioplasty and resection of distal clavicle + removal of mass.
Patient states that he has a lot of pain in the right shoulder, he has been doing pendulum exercises and the arm is weak.
PE:
Surgical wounds are healing well, minimal edema of the shoulder, muscle atrophy specially of the deltoid muscle, decreased ROM ABD 90 ant flexion 90, IR 5 ER 40
A/P
Mr Ganskins is s/p shoulder arthroscopy acromioplasty and resection of distal clavicle + removal of mass, pathology of mass showed a lipoma.
Patient has very decreased ROM, he need to start OT for ROM and strengthening of the right shoulder, 2 times a week for 4 weeks, continue codman exercises, he was given also some exercises and a theroband
If ROM does not improved and pain does not decreased by next follow up visit he may need an MUA

FOLLOW UP IN 4 WEEKS

DO NOT CUFF RIGHT ARM

**Signed by:**
**Dictated By:** CARRILLO, ADRIANA MD

**Co-Signed by:**
**Co-Dictated By:**

**Dictated Date:** 01/10/05

**Page: 1**

CARL SINGLETARY, M.D.

JAN 13 2005

**Lemuel Shattuck Hospital**
**170 Morton Street**
**Jamaica Plain, MA  02130**

**LSH OT PROGRESS NOTE**

**Patient:** GASKINS,TONY
**Unit #:** LS00074799
**Ordering Doctor:** CARRILLO, ADRIANA MD
**Acct #:** LS0001017037
**Patient Location:** ORT.L
**Associated Orders:**OT Therapeutic Exercise

## OCCUPATIONAL THERAPY Progress Note

**PT. WAS INSTRUCTED IN ROM AND STRENGTHENING EXERCISES.  HE DEMONSTRATED ABILITY TO DO ALL EXERCISES.  STRENGTHENING EXERCISES INCLUDED ISOMETRIC AND THERABAND.  HE WAS GIVEN WRITTEN INSTRUCTIONS FOR ALL EXERCISES AND ALSO GIVEN THERABAND.**

**Authenticated by:**  Michael A Accardi
**Date:**  01/10/05

**Additional Therapists:**  Michael A Accardi
**Co-Authenticated by:**
**Co-Dictated By:**

**Page: 1**

CARL SINGLETARY, M.D.

JAN 1 8 2005

UMass Correctional Health Program - DRAFT 12.16.2002

## Consultation Request

Ⓧ Off-Site  (Check Those That Apply)                    Reference Number: 127800

O Emergency        Ⓧ Specialty Clinic      O Ambulance        3-10-05  1⁰⁰ pm

O On-Site          O On-Site Clinic

Inmate: Goskins, Tony        Inmate ID: W52145        DOB: 7/16/67

Facility: MCI-CJ        Cost Center: _____        Incarceration End Date: Life

Procedure/Test/Specialty Requested: Orthopedic F/u    Provider: Dr. Carrillo / LSH orth

**Presumed Diagnosis:**

Post-op F/u  s/p Ⓡ Shoulder arthroscopy

acromioplasty resection of distal clavicle + removal of mass (loose)
12/8/04  Pt seen in F/u 1/10/05 by orth & referred
to OT for exercises 2⁰ very ↓ ROM Explain for

(see 1/10/05 ortho Note)

**Laboratory & X-Ray Data:**

N/A

**Current Medication / Failed Outpatient Therapies:**

**Other Diagnoses / Alerts:**

Asthma

**Expectation from Approved Procedures:**

↑ of ↓ROM & Forward ROM Ⓡ Shoulder

**Comments:**

Referring Clinician: CARL SINGLETARY, M.D.    Signature: _____    Date: _____

If Applicable        JAN 1 8 2005
State-Wide Medical Director: _____    Signature: _____    Date: _____

**Utilization Review Action (If Applicable)**

o M & R        o InterQual        o Saunders        o Other
o Criteria Met    o Criteria Not Met                o More Info Requested
Initials: _____        Date: _____

* For security reasons, inmates must NOT be informed of date, time, or location of proposed treatment or possible hospitalization
* Authorization and payment is provided ONLY for requested procedures or treatments of life-threatening conditions Prior

**Physician Appointment Scheduler**

```
LS0001016112        LS00074799
GASKINS,TONY        07/16/1967
(508)668-2100       ORT.L M
UMASS CORRECTI
```

Disposition: _____

_____

RTC 2WeekS

Please stop by the Appointment Desk in Patient Registration to book the following appointments:

Clinic: ___ortho___     Physician: ___Connally___

(Referring Institutions please note: call Appointment Desk to verify date and time prior
to appointment. Authorizations are required.)

## Consultation Request

● Off-Site    LSH
○ Specialty Clinic — ortho — PA Connolly
○ On-Site Clinic

○ Emergency
○ Ambulance

Refer Number: 126622
1/10/05 9am

Inmate: Tony Gaskins
Facility: MCI-CJ

Inmate ID: W52145
Cost Center:

DOB: 7/16/1967
Incarceration Date:

Procedure/Test/Specialty Requested: F/u - S/p ®

Estimated Release Date: Connolly
Provider:

**Presumed Diagnosis:** 2 wk F/u          Shoulder arthroscopy - ® shoulder clavicle shaving          ICD Code:

**Supporting Symptomatology:**

S/p surgery 12/08/04 - Above - Impingement syndrome & mass ®
Shoulder
Last F/u 12/27/04 - requested another F/u 2 weeks

**Exam Data:**

Wound clean, sling in place, ∅ c/o pain/numbness
on restrictions -

**Laboratory & X-Ray Data**

**Current Medication / Failed Outpatient Therapies:**

Allergic: reglan

**Other Diagnoses / Alerts:**

See Above        Asthma Hx

**Deviation from Approved Procedures:**

**Comments:**

**Kathy J. Stout, NP-C**
Referring Clinician    Unit Nurse Practitioner    Signature: Kathy Stout, NP-C    Date: 12/27/04

For security reasons, inmates must NOT be informed of date, time, or location of proposed treatment or possible hospitalization
Authorization and payment is provided ONLY for requested procedures or treatments of life-threatening conditions Prior
approval of UMCH State-wide Medical Director is required for additional procedures or hospitalization.

**Lemuel Shattuck HOSPITAL**

## Clinic Visit ~ Follow-up Consultation

Consult done for
F/u (R)S  12/27

Date: 12-27-04    Clinic: _____ 0    Primary Provider: _____

Vital signs: BP _____ P _____ RR _____ Temp _____ Wt _____ O2-Sat _____

2 weeks post (R) shoulder
Arthroscopy, Acromioplasty & B/o
Distal clavicle

Staples removed on -SIRS.
Wound is essentially healed. Dres-
-sing. Keep dressing. Keep
clean & dry

Still c pain c distal clavicle
size. & ROM limited.
Have instructed in pendulum
exercises
N/o lifting > 5 lbs
N/o extension of arm
N/o cuff (R) arm

RTC 2 weeks

☐ Problem List-reviewed/updated

☐ Med. Sheet - reviewed/updated    Page ___ of ___

Consultant's Signature/Print:
Connolly PA

Phone/Beeper: 465-8686

RTC: 2 weeks med

White Copy: Medical Records    Yellow Copy: ____ CARL SINGLETARY, M.D.
OPD.LS.09/01

JAN 0 6 2005

GASKINS, TONY
MCI CJ

LS0001016112    LS00074799
GASKINS, TONY    07/16/1967
(508) 668-2100    ORT.L M
UMASS CORRECTI

**Lemuel Shattuck Hospital**
*Department of Pathology*
170 Morton Street
Jamaica Plain, MA 02130
Tel: 617-971-3311    FAX: 617-971-3626

## SURGICAL PATHOLOGY REPORT

| | | | |
|---|---|---|---|
| Patient Name: | **GASKINS,TONY** | Surg Path #: | S04-1274 |
| DOB/Age/Sex: | 07/16/1967  37/M | Date Obtained: | 12/08/04 |
| Med Rec #: | LS00074799 | Date Received: | 12/08/04 |
| Account #: | LS0000992859 | Submitting Physician: | CARRILLO,ADRIANA MD |
| Location: | SDC.L | Report to: | |

**Specimen Submitted:**
    1. Mass - Right Shoulder
    2. Distal end of clavicle - & Shavings, Right Shoulder

**FINAL DIAGNOSIS:**
#1-Right shoulder mass-
    -Mature fibroadipose tissue consistent with lipoma.
#2-Right shoulder distal end of clavicle and shavings-
    -Bone, cartilage with degenerative changes and reactive synovium consistent with degenerative
    joint disease.

4 H&E
    **Dictated by:** David E Ricklan MD

**Gross Description:**
#1-Specimen received in formalin labeled " right shoulder mass ", consists of circumscribed fatty tissue
measuring 3.5 x 3 x 1.5 cm.  Representative sections submitted.
(2 Blocks)
#2-Specimen received in formalin labeled " right shoulder distal end clavicle & shavings ", consists of
multiple fragments of bone measuring in aggregate 5 x 3 x 1.5 cm.  Also received are multiple fragments
of soft tissue contained in a sac measuring in aggregate 1 x 1 x 1 cm.  Representative sections of soft
tissue are submitted in block 1 and Representative sections of bone are submitted in block 2 after
decalcification.
(2 Blocks)
(DR)

**Clinical History:**
Pre-Operative Diagnosis:  Impingement syndrome and mass right shoulder
Post-Operative Diagnosis:  Same

**Pathologist:**    David E Ricklan MD      **Date Completed:** 12/10/04

CARL SINGLETARY, M.D.
DEC 1 6 2004
Page 1 of 1

## Consultation Request

*has appt
12-27-04
0900*

☑ Off-Site    *LSH - Ortho*
O Specialty Clinic          O Emergency      Reference Number:
O On-Site Clinic:           O Ambulance      *# 126174*

Inmate: *Tony Gaskins*       Inmate ID: *W-52145*       DOB: *7/16/1967*
Facility: *MU-CJ*           Cost Center:              Incarceration Date:

Procedure/Test/Specialty Requested: *F/u post-op*
                                    Estimated Release Date:
                                    Provider: *Dr. Carrillo*

**Presumed Diagnosis:**                                    ICD Code:
*S/p ℝ shoulder arthroscopy    on 12/8/u*
*c/o distal clavicle*

**Supporting Symptomatology:**
*ℝ arm to sling, Drsng dry + intact incision/ staples intact,*
*clean, Ø erythema, wound margins approximated. Full ROM*
*hand/fingers - nail beds pink w+D*

**Exam Data:**
*See above, healing well*
*Sling in place*

**Laboratory & X-Ray Data**

**Current Medication / Failed Outpatient Therapies:**

**Other Diagnoses / Alerts:**
*No cuff ℝ Arm*

**Expectation from Approved Procedures:**

**Comments:**

                                    *Kathy J. Stout, NP-C*
                                    Adult Nurse Practitioner

Referring Clinician: *K Stout, NPC*    Signature: _____    Date: *12/15/2004*

* **For security reasons, inmates must NOT be informed of date, time, or location of proposed treatment or possible hospitalization**
* **Authorization and payment is provided ONLY for requested procedures or treatments of life-threatening conditions Prior approval of UMCH State-wide Medical Director is required for additional procedures or hospitalization.**

# Patient Care Referral Form

FROM: _L.S.H_

Unit/Clinic _____

ADDRESS _____

| | TEL. |
|---|---|
| ADM. DATE _12-8-04_ | DISCH. DATE _12-8-04_ |

TO: _____

ADDRESS: _____

ADDRESS: _____

| MEDICARE NO. & LETTER | | TEL. | | |
|---|---|---|---|---|
| | | PLAN A  B | BLUE CROSS NO. | SOC. SEC. NO. | OTHER |

| CLINIC APPOINTMENTS | DATE | TIME | |
|---|---|---|---|
| _L.S.H  Ortho_ | _12-27-04_ | _9 AM_ | Agency Worker Office Address Telephone |

Patient's Hospital Record # _____

PATIENT NAME _____ LS0000992859    LS00074799

ADDRESS: _____ M  07/16/1967  37
GASKINS, TONY
SDC. L
FLOOR _____ WHITELAW, GEOR

AGE  S  [barcode]
     M F   S M W D sep.

RELATIVE OR GUARDIAN: _____

DIAGNOSIS (S) Surgery Performed and Date, Allergies or Infections

_S/P (R) Shoulder Arthroscopy_     NKDA
_Acromioplasty + E/O Distal Clavicle_

Is Patient _____ Family _____ aware of diagnosis?

Date of last physical _____

**PHYSICIAN'S ORDERS:** (Include **specific orders** for Diet, Lab Tests, Speech, and O.T.)

TRANSPORT BY: ☐ Ambulance  ☐ Car

| MEDICATION | STRENGTH AND FREQUENCY | DATE & TIME OF LAST DOSE |
|---|---|---|
| _Tylenol_ | _#3  II PO q3° prn X 72°_ | |
| _Naproxyn_ | _500mg  PO q12° X 10 Days_ | |

_Sling (R) arm until follow-up_
_Keep Dressing Dry. Change Dressing_
_in 5 Days then DSD Daily. Remove_
_staples on site 10 Days_

TREATMENTS & FREQUENCY: _HU Mon 12-27-04  9 AM_

_NO CUFF Right arm._

DIET: _____

**PHYSICAL THERAPY:**  Restrict Activity ☐ Yes ☐ No     Sensation Impaired ☐ Yes ☐ No
Precautions   Weight Bearing Status - Non-Weight ☐   Partial-Weight ☐   Full-Weight ☐

SPECIFIC TREATMENT & FREQUENCY: _____

ANTICIPATED GOALS: _____

REHABILITATION POTENTIAL IS: _____

| HOME HEALTH SERVICES: | ☐ NURSING | OCC. ☐ THERAPY | SPEECH ☐ THERAPY | SOCIAL ☐ WORK | H.H. ☐ AIDE | ☐ OTHER-SPECIFY |
|---|---|---|---|---|---|---|

The above services require Level of Care: ☐ I  ☐ II  ☐ III  ☐ IV

If Chronic Hospital, Why? _____

**CERTIFICATION:** ✳ (when applicable)
Services above needed to treat condition for
which patient was hospitalized ☐ Yes ☐ No
I certify that the above named patient is: (check one)
☐ Under my care (or has been referred to another
physician having professional knowledge of patient's
condition); is home bound except when receiving out-
patient services; requires skilled nursing care on
an **intermittent basis** or physical or speech therapy
as specified in the orders.
☐ Requires skilled nursing care on a **continuing
basis** for any of the conditions for which he/she
received care during this hospitalization.

Signature _H Consults_ _____ M.D.

Print Name _Consh_ _____

Tel. _840_   Date _12-8-04_   Will follow: ☐ Yes ☐ No - If no, who?
CARL SINGLETARY, M.D.

ADDRESS: _____  DEC 0 9 2004

DMC71

APPROVED BY THE MASSACHUSETTS DEPARTMENT OF PUBLIC HEALTH

LS0000992859   LS00074799
M  07/16/1967   37
GASKINS, TONY
SDC.L
WHITELAW, GEOR

**LEMUEL SHATTUCK HOSPITAL**
**OPERATING ROOM**
**OPD ARTHROSCOPY PROTOCOL**
**OPD TEACHING/DISCHARGE SUMMARY**

**POST-OP CARE**    *S/p Right Shoulder Arthroscopy*
*Acromioplasty + Distal Clavicle* Keep dsg dry. Change
*Resection* dsg in 5 days then

1. **WOUND CARE**
   - Ace bandage and underlying dressing to be removed after 48 hours.
   - Band-aids should be applied to all portal areas.
   - Keep would areas dry (no showers) until the fifth post-operative day.
   - You can re-apply the ace bandage to the leg after the band-aid has
     been applied to provide light pressure and decrease swelling. (Do Not Apply Tightly).

   *DSD q2(K day), Staple/*
   *dressing removal*
   *Suture in Remove in 10 days*
   *on site.*

2. **SPECIAL INSTRUCTIONS**
   1. Keep leg elevated up on pillows while at rest, this helps to reduce swelling.
   2. Follow exercise and crutch walking per physical therapy's orders and let
      pain be your guide.   *hand*
   3. You need to monitor your leg closely for the first 24 hours to check for abnormalities.
      - You may have staining to the ace wrap, but this is normal. Excessive staining
        should be reported.
      - Check C.S.M. of the extremity. (Color, Sensitivity, Movement)
        Color - Toes should remain pink.
        Sensitivity - You should have no change in the extremity.   *fingers*
        Movement - You should be able to wiggle your toes and bend your knee.  *wrist*
   4. You should start your diet with clear liquids and advance to a regular diet as tolerated.
   5. You should void 7 hours post-operatively.   *by 5:00pm 12/8/04*
   6. Pain medication is prescribed on an individual basis. Pain should decrease to
      a level of where medication is not necessary within 3-5 days.

3. **ADDITIONAL INSTRUCTIONS**

   - *Tylenol #3, 2 tabs by mouth every 3 hrs PRN × 72°*
   - *Naprosyn 500mg by mouth every 12° × 10 day*
   - *Keep arm in sling until follow-up*

   **THE ABOVE INSTRUCTIONS HAVE BEEN EXPLAINED TO ME AND I UNDERSTAND THEM.**

   *Pt unable to sign 2° Right Handed / 12/8/04*
   **PATIENT/RESPONSIBLE PARTY**                    **DATE**
                                    *Right arm Surgery*

   **I HAVE REVIEWED THE ABOVE INSTRUCTIONS WITH THE PATIENT/RESPONSIBLE PARTY.**
   **HE/SHE DID/DID NOT DEMONSTRATE SATISFACTORY UNDERSTANDING.**

   *C B Cerritt*                        *12/8/04*
   **NURSE**                            **DATE**

   **COMPLETE AFTER DISCHARGE:**
   Condition _____
   Discharge Time _____   Mode _____ *CARL SINGLETARY, M.D.*
   Discharge Destination _____
   Accompanied By _____        *DEC 03 2004*
   Referral Papers _____

OPERATING ROOM        FAX:6173713763        Oct  5 2004  8:38        P.02

**Gaskins, Tony**            W52145

**Ambulatory Day History & Physical / 24 Hour Form** (Each line must have a response)

Service: _Ortho_            Date: _12/1/4_    Attending: _____

Chief Complaint: _chronic ® shoulders pain –_

History of Present Illness: _Lipoma - ® shoulder, ® A/C joint OA (chronic)_

| Past Medical Hx / ROS | No | Yes | Details |
|---|---|---|---|
| Allergies | | ✓ | Reglan ⟶ SE |
| Current Medications | | | |
| Past Surgeries / Procedures | | | |
| Smoking | | ✓ | 100 yr pack hx |
| Alcohol / Substance Abuse | | | |
| Cardiovascular Disease | | | |
| Respiratory Disease | | ✓ | ® Asthma , ® seasonal allergies |
| GI Disease | | | |
| Endocrine Disease | | | |
| Renal Disease | | | |
| Bleeding Disorder | | | |
| Neurological Disorder | | | |
| Psychiatric Disorder | | | |
| Musculoskeletal Disorder | | ✓ | tendonitis ® elbow , chronic ℒ OA AC joint |

Physical Exam: T _97'_  P _88_    RR _17_    BP _132_ , _88_        WT _181 #_    Pain _4 of 10_

| | Normal | Abnormal | Details |
|---|---|---|---|
| HEENT | ✓ | | ⊖ exudate pharynx – nares clear, TM's pearly grey |
| Heart | ✓ | | S1-S2 ⊕ ⊖ gallops or rubs |
| Lungs | ✓ | | clear anteriorly – slight wheeze posterior base FEV₁ 80% |
| Abdomen | ✓ | | soft NT N/D |
| GU | ✓ | | |
| Neurosensory | ✓ | | |
| Musculoskeletal Disorder | | ✓ | painful ROM ® UE shoulder |

Labs: _CBC ë diff , LFT's , PT , PTT pending_

EKG: _____

X-rays: _____

Impression / Preoperative Diagnosis: _® OA shoulder A/C joint_
Pre-Op Diagnosis: _Same_
Plan: _Surgery_                    I.V.C.S. [ ]
                                   (GI Procedures, etc)

[X] The patient remains an appropriate candidate to undergo the planned procedure, sedation / anesthesia; patient evaluated immediately prior to I.V.C.S.

_K Stout, NP-C_                    _12/1/4_
Resident/PA Signature (Print)        Date

**Kathy J. Stout, NP-C**
Attending Signature (Print) Adult Nurse Practitioner    Date

CARL SINGLETARY, M.D.

DEC 0 2 2004

Addressograph

OPD.03.04/01

Consultation Request

X Off-Site
O Specialty Clinic                    O Emergency         Referral Number?  12/8/04  7pm
O Off-Site Clinic                     O Ambulance                          125541

Inmate: Gaskins, Tony        Inmate ID: W52145        DOB: 7-16-67
Facility: CJ                 Cost Center:             Incarceration Date:

Procedure/Test/Specialty Requested: ® Shoulder Arthroscopy    Estimated Release Date: Life
                                                              Provider: LSH - ortho

**Presumed Diagnosis:**                                        ICD Code:
® AC joint OA

**Supporting Symptomatology:**

Pain ® Shoulder X 1-2 years. Seen by
orthopedics on 11/22/04, recommended E/O
distal clavicle.

**Exam Data:**

see ortho note of 11/22/04

**Laboratory & X-Ray Data:**

**Current Medication / Failed Outpatient Therapies:**

3 cortisone injections, Physical therapy c tens
and NSAIDS

**Other Diagnoses / Alerts:**

**Expectation from Approved Procedures:**

® Shoulder arthroscopy to ↑ ROM ↓ pain

**Comments:**

Referring Clinician: S Porter NP    Signature: Paula Porter  Date: 12/8/04

* For security reasons, inmates must NOT be informed of date, time, or location of proposed treatment or possible hospitalization.
* Authorization and payment is provided ONLY for requested procedures or treatments of life-threatening conditions Prior
  approval of UMCH State-wide Medical Director is required for additional procedures or hospitalization.

CARL SINGLETARY, M.D.

DEC 0 2 2004

## Physician Appointment Scheduler

**Lemuel Shattuck** HOSPITAL

LS0000911354      LS00074799
GASKINS/TONY         07/16/1967
(508) 668-2100      ORT.L  M
UMASS CORRECTI

Disposition: _____ SWL _____

Please stop by the Appointment Desk in Patient Registration to book the following appointments:

Clinic: _ORTHO_____    Physician: _Carullo_____

(Referring Institutions please note: call Appointment Desk to verify date and time prior to appointment, Authorizations are required.)

**Lemuel Shattuck Hospital**
**170 Morton Street**
**Jamaica Plain, MA  02130**

**LSH ORTHOPEDIC CONSULT. RPT**

**Date/Time of Report:**  11/22/04  1156
**Patient:** GASKINS,TONY
**Unit #:** LS00074799
**Acct #:** LS0000911354
**Ordering Doctor:** CARRILLO, ADRIANA MD
**Patient Location:** ORT.L
**Associated Orders:** ORTHOPEDIC CLINIC NEW PT LEV 3

37 yo AA male well known to me. AC Joint OA that has had little
response to cortisone injections.
His exam reveals crepitus with flexion and abduction and pain over AC Joint

x-ray: No space at AC Joint; Small amout space with weight

ASS:OA l AC Joint

REC:x shoulder arthroscopy and E/O distal clavicle

**Signed by:**
**Dictated By:**  CONNOLLY, MARY PA

**Co-Signed by:**
**Co-Dictated By:**

**Dictated Date:**  11/22/04

Page: 1

CARL SINGLETARY, M.D.

DEC 0 2 2004

Surgery
Scheduled for

12/8/04
7am

michelle
Jane

Orders ①
+ needs: CBC c̄ diff
LFt's, PT, PTT
② H/P, ③ NPO p̄ midnight
12/8

④ Stop AM ASA + NSAIDS
today → 12/8

## UMASS CORRECTIONAL HEALTH

### MEDICAL RESTRICTIONS

_DDU_
INSTITUTION

_Gaskins, Tony_     _W 52145_     _7/16/67_
NAME                    ID #              D.O.B.

_3/29/05_
DATE

TO: _____
        (D.O.C. DESIGNEE)

The above named inmate has been determined to have the following needs / restrictions due to a current medical condition:

| TYPE: | DATE | (FROM) | TO |
|-------|------|--------|-----|
| NO WORK STATUS | | | |
| LIGHT WORK STATUS | | | |
| BOTTOM BUNK | | | |
| SPECIAL EQUIPMENT (DESCRIBE BELOW) | | | |
| OTHER (DESCRIBE BELOW) | | | |

TRANSPORTATION RESTRICTIONS:

| | | | |
|-------|------|--------|-----|
| NO WAISTCHAINS | | | |
| NO HANDCUFFS | _WAIST CHAINS ONLY_  _3/29/05_ | | _6/29/05_ |
| NO ANKLE RESTRAINTS | | | |
| VEHICLE WITH CAR SEATS | | | |
| MEDICAL VAN | | | |

MEDICAL REASON:

_(R) shoulder pain - only apply waistchains to inmate_

SUBMITTED BY: _____ DATE: _____ TIME: _____
                              MD/PA(NP)
REVIEWED BY: _____ DATE: _3/31/05_ TIME: _0915_
                              HSA
APPROVED BY: CARL SINGLETARY, M.D. DATE: _____ TIME: _1015A_
              SITE MEDICAL DIRECTOR

MAR 3 0 2005

(ORIGINAL IN MEDICAL RECORD AFTER APPROVAL)
(COPY TO D.O.C. DESIGNEE)



## UMASS CORRECTIONAL HEALTH

### MEDICAL RESTRICTIONS

Gaskins, Tony
_____
NAME

2/11/05
_____
DATE

W52145
_____
ID #

7/16/67
_____
D.O.B.

MCI·W
_____
INSTITUTION

TO: _____
(D.O.C. DESIGNEE)

The above named inmate has been determined to have the following needs / restrictions due to a current medical condition:

| TYPE: | DATE | (FROM) | TO |
|-------|------|--------|-----|
| NO WORK STATUS | _____ | | _____ |
| LIGHT WORK STATUS | _____ | | _____ |
| BOTTOM BUNK | _____ | | _____ |
| SPECIAL EQUIPMENT (DESCRIBE BELOW) | _____ | | _____ |
| OTHER (DESCRIBE BELOW) | _____ | | _____ |

* waistchains c (R) cuff extension 2/11/05          3/10/05

**TRANSPORTATION RESTRICTIONS:**

| | | |
|---|---|---|
| NO WAISTCHAINS | _____ | _____ |
| NO HANDCUFFS | _____ | _____ |
| NO ANKLE RESTRAINTS | _____ | _____ |
| VEHICLE WITH CAR SEATS | _____ | _____ |
| MEDICAL VAN | _____ | _____ |

**MEDICAL REASON:**

limited ROM (R) shoulder
_____
_____
_____
_____

SUBMITTED BY: _____ MD/PA/NP    DATE: _____ TIME: _____

REVIEWED BY: _____ HSA    DATE: 2/16/05 TIME: 0915

APPROVED BY: _____    DATE: _____ TIME: _____
SITE MEDICAL DIRECTOR

CARL SINGLETARY, M.D.    gusan

FEB 1 5 2005        (ORIGINAL IN MEDICAL RECORD AFTER APPROVAL)
(COPY TO D.O.C. DESIGNEE)

## UMASS CORRECTIONAL HEALTH

### RELEASE OF RESPONSIBILITY

_MCI - CJ_
Institution

Name: _Gaskins, Tony_    ID # _W 52145_    D.O.B. _____

I hereby refuse to accept the following treatment / recommendations:
_To have staples removed by nurse 12/18/04 as ordered - wants M.D. to remove monday._

**Potential Health Care Risk Associated With Refusal:**
_Improper healing of site._

I acknowledge I have been fully informed of and understand the above treatments or recommendations and the risk(s) involved in refusing.  I hereby release and agree to hold harmless UMass Correctional Health, its employees and agents from all responsibility and ill effect which may result from this action.


_____    _12/18/04_
Inmate Signature                           Date/Time


_Linda Gudmundsson_              _12/18/04_
UMass Correctional Health Witness        Date/Time

The aforementioned inmate has refused the listed medical treatment / recommendations and has refused to sign this form.


_____    _____
UMass Correctional Health Witness        Date/Time


_____    _____
UMass Correctional Health/Other Witness   Date/Time

UMASS 7120 Rev. 4/97

JMS

## UMASS CORRECTIONAL HEALTH
## MEDICAL RESTRICTIONS

MU-CJ
INSTITUTION

| Tony Gaskins | WS2145 | 7/16/67 |
|---|---|---|
| NAME | ID # | D.O.B. |

12/15/04
DATE

TO: _____
(D.O.C. DESIGNEE)

The above named inmate has been determined to have the following needs / restrictions due to a current medical condition:

| TYPE: | DATE | (FROM) | TO |
|---|---|---|---|
| NO WORK STATUS | | | |
| LIGHT WORK STATUS | | | |
| BOTTOM BUNK | | | |
| SPECIAL EQUIPMENT (DESCRIBE BELOW) | | | |
| OTHER (DESCRIBE BELOW) | | | |

TRANSPORTATION RESTRICTIONS:

| NO WAISTCHAINS | | | |
|---|---|---|---|
| DIFFERENT HANDCUFFS  Right arm | 12/15/04 | | 12/27/04 |
| NO ANKLE RESTRAINTS | | | |
| VEHICLE WITH CAR SEATS | | | |
| MEDICAL VAN | | | |

MEDICAL REASON: Medical/surgical reasons

CUFF ATTACHED TO WAIST CHAIN (LM)
ARM TO REMAIN IN SLING

SUBMITTED BY: K Stout, NP-C    DATE: 12/15/4    TIME: 2000
                    MD/PA/NP
REVIEWED BY: _____    DATE: _____    TIME: _____
                    HSA
APPROVED BY: _____    DATE: _____    TIME: _____
    CARL SINGER FATT, M.D.    SEE MEDICAL DIRECTOR

CARL SINGER FATT, M.D.
DEC 17 2004    (ORIGINAL IN MEDICAL RECORD AFTER APPROVAL)
                    (COPY TO D.O.C. DESIGNEE)

8002 (Rev. 8/97)

COMMONWEALTH OF MASSACHUSETTS

DEPARTMENT OF CORRECTION

103 CMR 491.00 INMATE GRIEVANCES

SECTION

491.01  Purpose
491.02  Authorization
491.03  Cancellation
491.04  Applicability
491.05  Access to Regulations
491.06  Definitions
491.07  Informal Resolution
491.08  General Requirements
491.09  Initiating a Grievance
491.10  Processing a Grievance
491.11  Emergency Grievances
491.12  Appeal Process
491.13  Central Office Review
491.14  Settlements
491.15  Inmate Transfers
491.16  Grievance Withdrawals
491.17  Abuse Of the Grievance Process
491.18  Extension of Time Periods
491.19  Grievant's Failure to Comply with Time Limits
491.20  Emergencies
491.21  Responsible Staff
491.22  Annual Review Date
491.23  Severability Clause

491.01        Purpose

The purpose of 103 CMR 491.00 is to establish rules and procedures governing the filing and resolution of grievances by inmates.

491.02        Authorization

103 CMR 491.00 is promulgated pursuant to M.G.L. c. 124, §1(i) and (q) and c. 127, §38E.  103 CMR 491.00 is not intended to confer any procedural or substantive rights or any private cause of action not otherwise granted by state or federal law.

491.03          Cancellation

103 CMR 491.00 cancels all previous departmental and institutional policy statements, bulletins, directives, orders, notices, rules or regulations regarding inmate grievances.


491.04          Applicability

103 CMR 491.00 is applicable to all employees and inmates at all state correctional institutions within the Department of Correction.

491.05          Access to Regulations

103 CMR 491.00 shall be maintained within the Central Policy File of the Department and shall be accessible to all Department employees.  A copy of 103 CMR 491.00 shall also be maintained in each Superintendent's Central Policy File and at each inmate library, including all inmate law libraries.  Additionally, all new inmate commitments and incoming inmate transfers shall be notified of Department and Institution Grievance Procedures during the inmate's orientation.

491.06          Definitions

Abuse - The filing of repetitive grievances addressing the same issue where sufficient time for response has not elapsed or where a valid response has been provided; the filing of an excessive number of frivolous grievances; the appeal of a grievance settled in the inmate's favor; or the intentional filing of emergency grievances that are not emergencies or grievances concerning issues not grievable hereunder.

Departmental Grievance Coordinator - a designee of the Commissioner who acts as a review authority for grievances.

Emergency Grievance - a grievance processed in an expedited manner to resolve an issue in which a delay may cause substantial risk of personal injury or other damages.

Grievance- a written complaint filed by an inmate on the inmate's own behalf in accordance with 103 CMR 491.00.

Grievant - any Department of Correction inmate who files a grievance in accordance with 103 CMR 491.00.

Institutional Grievance Coordinator - the staff person responsible for attempting resolution of grievances and for coordinating the operation of the grievance procedure at the institutional level.

491.07 Informal Resolution

Each institution should develop informal measurers for resolving inmate complaints whereby inmates are encouraged to communicate their problem to the staff person responsible in the particular area of the problem, e.g., Correction Program Officer, the appropriate department head or other institutional staff. Staff awareness as to the need for prompt attention and response to these complaints will minimize the use of formal grievance procedures. While inmates are encouraged to pursue informal measures prior to filing a grievance, they shall not be required to do so.

491.08   General Requirements

(1)    Classification, including identification of an inmate as a sex offender, and disciplinary decisions and recommendations are not grievable under 103 CMR 491.00 as there are existing appeal mechanisms for each of these areas. Decisions and recommendations concerning therapeutic diets are not grievable under 103 CMR 491.00 as there is an existing complaint procedure pursuant to 103 CMR 761.00. Additionally, medical or clinical decisions related to an inmate's physical or mental condition shall not be grievable under 103 CMR 491.00 as the medical contractor is required to maintain its own grievance procedure, however, matters concerning access to medical or mental health care are grievable.

(2)    No grievance shall be accepted which is filed by a group or on behalf of a group of inmates.

(3)    A grievance may only be filed concerning one subject matter.

(4)    A grievance shall be filed within ten working days of the actual incident or situation or within ten working days of the inmate's becoming aware of the incident or situation. Whenever a grievance is returned pursuant to 103 CMR 491.10(2) for improper format, the inmate shall have an additional three working days from the date of receipt to file a grievance in proper format.

(5)    Inmates who are illiterate, who cannot read or write legibly or who cannot speak English are authorized to obtain assistance from their case manager or other staff member. In cases where staff assistance is not available, inmate assistance under staff supervision may be utilized.

(6)    Inmates shall not be subject to adverse action, including disciplinary charges, for utilizing the grievance procedure, except for inmates who abuse the grievance procedure by filing an excessive number of frivolous grievances or who intentionally and in bad faith misrepresent or omit material information.

491.09          Initiating A Grievance

(1)     Forms - Inmates may process their grievance by obtaining an institution grievance form from those locations and staff persons designated by the Superintendent. Grievance forms shall be readily available to all inmates, including those in segregated units.

(2)     Content of Grievance Forms - All grievances should be legible and must contain the following information:

        (A)     the date of occurrence of the incident;
        (B)     the name of current institution;
        (C)     the name of institution of complaint;
        (D)     a brief statement of facts;
        (E)     the remedy being requested;
        (F)     the signatures of both the inmate and staff recipient.

(3)     Filing - Completed grievance forms may be filed as follows:

        (A)     directly with the Superintendent, Deputy Superintendent,  Facility Administrator, or Institutional Grievance Coordinator; or;

        (B)     by depositing the completed form in a locked mailbox or drop box.  All mailboxes or drop boxes identified for inmate grievances shall be opened at least once each working day;

        (C)     All grievances shall be forwarded to the Institutional Grievance Coordinator on the date received.  The Institutional Grievance Coordinator shall sign, date-stamp and number each grievance received.

491.10          Processing a Grievance

(1)     Upon receipt of an inmate's grievance the Institutional Grievance Coordinator shall:

        (A)     acknowledge receipt of the grievance form through a written notification to the inmate;

        (B)     ensure that the grievance complies with 103 CMR 491.09(2) and if not, return the   grievance to the inmate with a written explanation;

        (C)     interview the inmate and, if appropriate, the staff person responsible for the area  where the problem occurred;

> (D)     review staff efforts to resolve the issue informally, and proceed to exhaust all efforts of resolving the grievance;
>
> (E)     investigate the factual basis of the grievance and propose a resolution or deny the grievance, within ten (10) working days from receipt of the grievance;
>
> (F)     provide the inmate a written explanation regarding the proposed resolution or the reasons for the denial of the grievance.

(2)     Proposed resolutions shall clearly state what specific corrective action will be taken.

(3)     If satisfied with the proposed resolution, the inmate shall sign an acknowledgment form and the grievance procedure shall be considered resolved.

(4)     Denied grievances shall inform the inmate of the right to appeal.

(5)     Record Keeping and Distribution - Records of all institutional grievances shall be maintained by the Institutional Grievance Coordinator.  A grievance log shall be maintained indicating the assigned number of the grievance, the date the grievance was received, the inmate's name and identification number, the facility where the inmate is housed, the subject of the grievance, and the decision made. The original grievance form shall be placed in the inmate's institutional file, a copy shall be maintained by the institutional grievance coordinator and a copy returned to the inmate.

## 491.11     Emergency Grievances

(1)     An inmate who believes his grievance involves an issue for which a delay in resolution may  cause a substantial risk of personal injury or other damages shall plainly mark the grievance form "EMERGENCY."

(2)     Emergency grievances shall be evaluated by the Institutional Grievance Coordinator to determine whether it is, in fact, an emergency.  If the matter is determined not to be an emergency, the grievance form shall be returned to the inmate for proper filing.

(3)     Emergency grievances shall be processed in the same manner as other grievances, except that the process shall be completed within three working days of the filing of the grievance.

(4)     The Superintendent shall decide an appeal from the denial of an emergency grievance within five working days.

491.12          Appeal Process

The appeal process at each institution shall include the following:

(1)     Filing - An inmate whose grievance has been denied may appeal to the Superintendent.       Appeal forms shall be made available from designated institutional staff. The original grievance form must accompany all appeal forms. The appeal form must be filed within ten (10) working days from receipt of a decision to the Superintendent unless 491.11 or  491.17 are applicable.

(2)     Duties and Responsibilities - Upon receipt of an inmate's appeal, the Superintendent's office shall date the form.  Written notification of receipt of the grievance shall be forwarded to the inmate.

(2)     Time Limits for Response - The Superintendent shall respond to the grievant, in writing, within thirty (30) working days from receipt of the grievance.

(3)     Approvals and Denials - The Superintendent should specify in writing the reason(s) for his decision on each appeal.  The Superintendent shall sign and date all appeal forms.  In cases where the Institutional Grievance Coordinator's decision is modified or overturned, the specific corrective action which, is to be taken, if any, should be clearly stated.  If satisfied with the proposed resolution, the inmate shall sign an acknowledgement form.

(4)     Record keeping and Distribution - The Superintendent shall maintain a record of all grievance appeals.  The appeal and original grievance will be returned to the inmate, with copies distributed to the inmate's institutional file, and forwarded to the respective Institutional Grievance Coordinator.

491.13          Central Office Review

Whenever a grievance appeal to the Superintendent is denied, the appeal package and any relevant documentation shall be forwarded to the departmental grievance coordinator. The departmental grievance coordinator may take any action upon review of a grievance that the Superintendent is authorized to take under 103 CMR 491.12.  Whenever a superintendent places limitations on an inmate's ability to file grievances pursuant to 103 CMR 491.17, a copy of the decision and any relevant documentation shall be forwarded to the departmental grievance coordinator.

491.14        Settlements

All property or monetary settlements resulting from grievances or appeals are to be approved by the Superintendent of the facility from which the grievance originated or by the departmental grievance coordinator.

The Institutional Grievance Coordinator shall ensure that all required information is on the form, i.e., physical description, monetary value, inmate signature, and witness.

The Superintendent or departmental grievance coordinator shall determine if the settlement is appropriate.  All settlements will be recorded by the Institutional Grievance Coordinator in a Settlement Log and assigned a number.

491.15        Inmate Transfers

When an inmate is transferred after a grievance has been filed, but prior to its being resolved, the grievance, if still applicable, shall be processed by staff at the originating institution.  When a transferred inmate files a grievance concerning a matter which arose at the sending institution, the Institutional Grievance Coordinator at the inmate's present institution shall process the grievance.

491.16        Grievance Withdrawals

Inmates wishing to withdraw grievance appeals should contact the Institutional Grievance Coordinator in writing.  Grievance withdrawals and withdrawals of grievance appeals shall be maintained on file by the Institutional Grievance Coordinator and may be used for research, officer training and statistical data but shall not be placed in either the inmate's institution or Central Files.

491.17        Abuse Of the Grievance Process

(1)    Punishment or disciplinary actions shall not result from the inmate's filing of a complaint, or grievance unless the inmate demonstrates a pattern of abuse of this process by filing clearly frivolous, repetitious, or knowingly false documents.

(2)    An inmate who files five or more grievances in a week or twenty or more grievances in any 180 consecutive day period may be determined to be abusing the grievance procedure.

(3)    An inmate may be limited to not more than 10 active grievances at any one time, not including any emergency grievance(s).

(4)    Abuse of the grievance process shall be determined by the Superintendent where the inmate is housed.  Upon a determination of abuse, limitations on the inmate's ability to file grievances may be imposed as follows:

(A)     The Superintendent may impose a suspension of the inmate's ability to file grievances for a length of time commensurate with the degree of abuse.

(B)     The length of suspension may be up to six months and may be increased for second and subsequent offenses in increments not to exceed six months.

(C)     Inmates under suspension shall normally be allowed to file emergency grievances.

(D)     Abuse of the emergency grievance procedures may lead to suspension of the ability to file emergency grievances as well.

491.18         Extension of Time Periods

The time periods referred to in 103 CMR 491.000 for filing a grievance or appeal or for response to any inmate grievance may be extended for a like period if the Institutional Grievance Coordinator or Superintendent determines that the initial period is insufficient to make an appropriate decision or if the inmate presents a legitimate reason for requesting an extension.

Written notice of all extensions shall be provided to the grievant.

491.19         Grievant's Failure to Comply with Time Limits

Failure by a grievant to comply with the time restrictions imposed by 103 CMR491.000, unless waived by the Institutional Grievance Coordinator or Superintendent, shall terminate the grievance process.

491.20         Emergencies

Whenever in the opinion of the Commissioner, Deputy Commissioner or the Superintendent of a state correctional institution, an emergency exists which requires suspension of all or part of 103 CMR 491.00, a suspension may be ordered, except that any such suspension lasting beyond 48 hours must be authorized by the Commissioner.

491.21         Responsible Staff

The Superintendent of each institution shall be responsible for implementing and monitoring 103 CMR 491.00.

491.22        Annual Review Date

103 CMR 491.00 shall be reviewed at least annually by the Commissioner or his designee.  The party or parties conducting the review shall develop a memorandum to the Commissioner with a copy to the Central Policy File indicating revisions, additions, or deletions which shall be included for the Commissioner's written approval.

491.23        Severability Clause

If any article, section, subsection, sentence, clause or phrase of 103 CMR 491.00 is for any reason held to be unconstitutional, contrary to statute, in excess of the authority of the commissioner or otherwise inoperative, such decision shall not affect the validity of any other article, section, subsection, sentence, clause or phrase of 103 CMR 491.00.

REGULATORY AUTHORITY

        103 CMR 491.000: M.G.L. c.124, 1 (i) and (q) and c.127, 38E.

# DEPARTMENT OF CORRECTION

## INMATE GRIEVANCE PROCEDURES

PURPOSE:   To develop standardized inmate grievance procedures throughout the
Department of Correction.

1.   Inmates filing an institution grievance shall complete the Institution Grievance Form
(Attachment A) and forward this form to the Institution Grievance Coordinator
within ten (10) working days from the date of the incident/situation or within ten
(10) days of the inmate becoming aware of the incident/situation.

The Institution Grievance Coordinator shall process the inmate grievance as follows:

A.   Date stamp the top portion of the Inmate Grievance Form.
B.   Receipt the inmate by completing and removing the bottom portion of the
Inmate Grievance Form (Section C) and forward it to the inmate.  This
shall be done as soon as practicable.
C.   Provide the grievance a number and document the grievance information
in a log- book.
D.   Ensure the grievance is written for only the inmate with the concern.
E.   Investigate the inmate's concern and prepare a brief summary of the
findings. Additionally, ensure that any relevant documentation to support
the finding is attached.
F.   The Institution Grievance Coordinator shall render his/her decision on
section "B" of the grievance form within ten (10) working days from the
receipt of the grievance.

The Institution Grievance Coordinator shall provide the inmate with a
copy of the decision and request that the inmate sign an
Acknowledgement Sheet (Attachment B) outlining the resolution.  The
inmate's signature shall only be requested for approved grievances.  The
IGC shall also sign the Acknowledgement Sheet as a witness.

Lastly, the Acknowledgment sheet shall be sent to the Superintendent for
final approval/signature.

2.   If the inmate indicates he/she will be appealing the decision they shall be provided
with the appropriate Institution Appeal Form (Attachment C) which shall be
submitted to the Superintendent within ten (10) working days from the decision of
the Institution Grievance Coordinator.  In addition, the Institution Grievance
Coordinator shall provide the Superintendent with the original grievance, the
summary of findings and supporting documentation.

The Superintendent shall process the grievance as follows:

A.      Date stamp the top portion of the Institution Appeal Form.

B.      Receipt the inmate by completing and removing the bottom portion (Section C) of the Institution Grievance Appeal Form and forward it to the inmate.  This shall be done as soon as practicable.

C.      Indicate the original grievance number on the Institution Appeal Form, assign the appeal an appeal number and record all information in a logbook.

D.      The Superintendent shall review the documentation on the original grievance, all supporting documentation and render a decision within thirty (30) days from receipt of the appeal.

E.      In the event the Superintendent modifies or overturns the Institution Grievance Coordinators decision the plan of action shall be clearly stated under the Summary of Findings (Section B).

When the process is complete the Institution Grievance Coordinator will provide the inmate with the Superintendent's decision and an Acknowledgement Sheet (Attachment B). The inmate shall sign his/her name to the form if he/she agrees with the decision rendered.  The Institution Grievance Coordinator shall sign the Acknowledgement Sheet as a witness.

Lastly, the Acknowledgement Sheet shall be forwarded to the Superintendent for final approval.

F.      <u>If the grievance is denied</u>, the Inmate Grievance Coordinator shall provide a copy of the original grievance, the denied institution appeal form and all supporting documentation to the Department Grievance Coordinator as soon as possible.

3.   After a thorough review of the denied grievance appeal and relevant supporting documentation, the Department Grievance Coordinator has the ability to overturn the Superintendent's decision if warranted.

A.  The Department Grievance may conduct staff/inmate interviews if necessary.

4.   Inmates may file "EMERGENCY GRIEVANCES" on the regular grievance form however, they must plainly mark the grievance form "EMERGENCY".  When an "EMERGENCY GRIEVANCE" is filed by an inmate the Institution Grievance Coordinator shall be responsible for the following actions:

A.      Date stamp the top of the grievance form and forward the receipt portion of the "Emergency Grievance" to the inmate.

B.      Provide the "Emergency Grievance with a number and record the information in the log book.

C.      Determine if the "Emergency Grievance" filed is an actual emergency.

      \*\* If the Grievance is determined to be an Emergency, The Institution Grievance Coordinator shall notify the Department Grievance Coordinator as soon as possible.

      \*\* If the Grievance is determined NOT to be an emergency the grievance shall be returned to the inmate for proper grievance filing.

D.    The IGC shall render a decision on Emergency Grievances (Section "B") within three (3) working days from the filing of the Emergency Grievance.

E.    The Superintendent shall decide an appeal on all Emergency Grievances within five (5) working days.

F.    All denied Emergency Grievances, denied institution appeals and supporting documentation shall be submitted to the Department Grievance Coordinator for review. The institution appeal may be overturned by the DGC if it is determined to be appropriate.

5.    Inmate's who are found to abuse the grievance/emergency grievance process in accordance with 103 CMR 491.17 shall be provided with a Suspension of Grievances Letter (Attachment D). This letter shall be completed by the Superintendent/designee and signed by the Superintendent. Copies of this letter shall be provided to the Institution Grievance Coordinator and the Department Grievance Coordinator.

    Please note however, that an inmate under a grievance suspension shall normally be allowed to file emergency grievances.

6.    All Monetary Settlements shall be outlined on the Monetary Settlement of Claim form (Attachment E) and shall signed by the inmate, the Institution Grievance Coordinator and the Superintendent. A copy of the Monetary Settlement form shall be forwarded to the Department Grievance Coordinator for tracking purposes.

7.    All other sections of the 103 CMR 491, Inmate Grievance Policy shall apply.

8.    Each Institution Grievance Coordinator shall maintain institutional grievance records for seven (7) years. Additionally, the Department Grievance Coordinator shall maintain all central office grievance documents for seven (7) years.

ATTACHMENT "A"

DEPARTMENT OF CORRECTION
**INMATE GRIEVANCE FORM**
**FORWARD TO THE INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)**

**SECTION "A"**

NAME:_____ INSTITUTION:_____

NUMBER:_____HOUSING UNIT:_____ DATE OF INCIDENT:_____

COMPLAINT:_____

_____

_____

(ATTACH ADDITIONAL PAGE IF NECESSARY)

REMEDY
REQUESTED:_____

_____

_____

INMATE SIGNATURE:_____DATE:_____

STAFF RECIPIENT:_____DATE:_____

DATE RECEIVED:_____
--------------------------------------------------------------------------------------------------------------------------

**SECTION "B"**

ASSIGNED GRIEVANCE NUMBER:_____

DECISION RENDERED:        _____APPROVED
                          _____ DENIED

SUMMARY OF FINDINGS:

_____

_____

_____

_____

_____

_____

IGC SIGNATURE:_____DATE:_____
**(DENIED GRIEVANCES MAY BE APPEALED TO THE SUPERINTENDENT WITH 10 DAYS OF IGC'S DECISION.)**
**SECTION "C"**
**INMATE GRIEVANCE RECEIPT**

INMATE NAME:_____INSTITUTION:_____

NUMBER:_____DATE RECEIVED:_____

SIGNATURE (IGC):_____TITLE:_____

ATTACHMENT "C"

DEPARTMENT OF CORRECTION
**INSTITUTION APPEAL FORM**
**FORWARD TO THE INSTITUTIONAL SUPERINTENDENT**

**SECTION A**

NAME:_____ INSTITUTION:_____

NUMBER:_____HOUSING UNIT:_____ DATE OF INCIDENT:_____

APPEAL:_____

_____

_____

(ATTACH ADDITIONAL PAGE IF NECESSARY)

REMEDY
REQUESTED:_____
_____
_____

INMATE SIGNATURE:_____DATE:_____

STAFF RECIPIENT:_____DATE:_____

DATE RECEIVED:_____
---------------------------------------------------------------------------------------------------------------------

**SECTION B**

ASSIGNED GRIEVANCE NUMBER:_____

ASSIGNED INSTITUTION APPEAL NUMBER:_____

DECISION RENDERED:          _____APPROVED
                            _____ DENIED

SUMMARY OF FINDINGS:

_____
_____
_____
_____
_____
_____

SUPERINTENDENT'S
SIGNATURE:_____DATE:_____

<u>SECTION C</u>

**INMATE APPEAL RECEIPT**

INMATE NAME:_____INSTITUTION:_____

NUMBER:_____DATE RECEIVED:_____

RECEIPTING STAFF:_____TITLE:_____

**ATTACHMENT "B"**

## <u>ACKNOWLEDGEMENT SHEET</u>

**I_____, an inmate of the Massachusetts**

**Department of correction agree to settle  grievance #_____ as I am**

**satisfied with the resolution as follows:**

_____
_____
_____
_____
_____
_____
_____
_____

**Furthermore, I release the Department of Correction and its employees of all**

**liability arising out of the subject matter of the grievance.**

**Inmate's Signature:_____Date:_____**

**Witness:_____Date:_____**

## <u>INSTITUTION APPROVAL</u>

**I have reviewed the facts of the above grievance and find that the settlement is
appropriate.**

**Superintendent:_____Date:_____**

ATTACHMENT "E"

## MONETARY SETTLEMENT OF CLAIM
## M.G.L.  C.  258, INCLUDING
## SETTLEMENT AND RELEASE OF CLAIM

I,_____, an inmate of the

MassachusettsDepartment of Correction, hereby make claim pursuant to M.G. L. ,

C. 258 against the Commonwealth for (Please be specific as possible as to dates,

places, value, physical descprition and identifying information etc.):

_____

_____

_____

_____

In the interests of a speedy and efficient disposition of said claim, I hereby settle said

claim in full and release the Department of Correction and its employees of all

liability arising out of this claim, in consideration of the receipt of:

_____

_____

_____

_____

Signed :_____ Dated:_____

Witness:_____Dated:_____
       IGC

## <u>INSTITUTION APPROVAL</u>

I have reviewed the facts of the above-described claim and find that the described
settlement is appropriate.  Claim is to be paid from an appropriate account.

01/05/01                                                                                          491 -  16

_____    _____
**Superintendent**                                                             **Dated**



                                                                  **ATTACHMENT "D"**

**MEMORANDUM**

**TO:    INMATE:**_____**ID#**_____

**FR:** _____

**DATE:** _____

**RE:    SUSPENSION OF GRIEVANCES NOTIFICATION**

**Please be advised that you have been determined to be an abuser of the grievance**

**process in accordance with 103 CMR 491, Inmate Grievance Policy.  As a result,**

**your ability to file grievances has been suspended until**_____**.**


**Please note that your ability to file an emergency grievance is still in effect however,**

**if  you are found to abuse this process, your ability to file emergency grievances may**

**also be suspended in the future.**


**cc.  DGC**
     **Superintendent**
     **IGC**
     **Inmate file**