UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-10858-GAO

|  |  |
|---|---|
| TONY B. GASKINS,<br>    Plaintiff, | )<br>)<br>) |
| V. | )<br>) |
| UMASS CORRECTIONAL HEALTH SERVICES,<br>DR. CARL SINGLETARY, and<br>STANLEY GALAS, NP, et al.<br>    Defendant, | )<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF DEFENDANTS, STANLEY GALAS AND CARL SINGLETARY, M.D., IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

In this civil action, the plaintiff, a _pro se_ prisoner incarcerated within facilities operated by the Department of Correction, seeks declaratory relief and compensation for purported civil rights violations allegedly committed by the defendants. The plaintiff claims the defendant violated his civil rights by displaying deliberate indifference to his serious medical following shoulder surgery on December 8, 2004.. The plaintiff alleges that he was not provided with appropriate physical therapy and rehabilitation for his shoulder. The defendants dispute the assertions of civil rights violations and, on the basis of the medical health records and the affidavit of Stanley Galas, ("Affidavit") incorporated herein by reference, pursuant to Fed. R. Civ. P 56, move for summary judgment on the plaintiff's claims.

**ARGUMENT**

I.     SUMMARY JUDGMENT STANDARD

Summary judgment is to be granted when, based on the pleadings, affidavits and depositions, "there is no genuine issue as to any material fact and [where] the moving party is

entitled to a judgment as a matter of law." Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A non-moving party cannot rest on mere allegations; the non-moving party must adduce specific, provable facts that establish that there is a triable issue. Rogers v. Fair, 902 F.2d 130, 143 (1st Cir. 1990). There must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986)(citations omitted).

II.   THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFF'S CLAIM OF DELIBERATE INDIFFERENCE TO HIS MEDICAL NEEDS.

It is clear that "[i]n order to establish that medical mistreatment constitutes a violation of the Eighth Amendment, a prisoner must show 'acts or omissions' sufficiently harmful to evidence deliberate indifference to serious medical needs." Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985), quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976). In Estelle, the Supreme Court articulated the standard to be applied to a claim by a prisoner that his constitutional rights were violated by the failure of prison officials to provide adequate medical services:

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint, that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment.

Id. at 105-106 (emphasis added). Accordingly, under Estelle, it must be demonstrated that the specific acts or omissions relative to a prisoner's medical treatment constituted "an unnecessary and wanton infliction of pain" or were "repugnant to the conscience of mankind." Id.; see Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985). "Where there is no evidence of treatment so inadequate as to shock the conscience, let alone that any deficiency was intentional or evidence of acts or omissions so dangerous with respect to health or safety, that a defendant's knowledge of a large risk can be inferred, summary judgment is appropriate." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991).

In a fairly recent pronouncement, the United States Supreme Court reaffirmed Estelle, this time expressly holding that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S., 825, 837 (1994). Farmer thus equates deliberate indifference with criminal recklessness.

As illustrated by both the holding in Farmer as well as the principal case law, in the context of §1983 claims for infliction of cruel and unusual punishment, the federal courts have applied the standard enunciated in Estelle strictly and have defined "deliberate indifference" narrowly. See e.g., Ferranti v. Moran, 618 F.2d 888 (1st Cir. 1980); Layne v. Vinzant, 657 F.2d 468 (1st Cir. 1980). In Ferranti, the court held that where medical attention was given to an inmate, disagreement as to the appropriate course of medical treatment or the source of treatment did not constitute "deliberate indifference" and as such was not actionable as a violation of the Eighth Amendment. Id. at 890. Similarly, in Layne, the court held that even substandard

3

medical treatment would not constitute a cognizable claim absent a showing of "deliberate indifference" to the serious medical needs of an inmate. Id. at 474; Langton v. Commissioner of Correction, 34 Mass. App. Ct. 564 (1993) (alleged conditions under which inmates tested for tuberculosis did not constitute "deliberate indifference to serious medical needs").

As set forth above, assuming a plaintiff can satisfy the first prong of the Estelle standard by a showing of his "serious medical needs," something more than negligent treatment must then be alleged to state a claim for violations of the Eighth Amendment proscription against the infliction of cruel and unusual punishment. Echoing the Supreme Court's rationale in Estelle, the Court of Appeals for the Sixth Circuit has said: "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Neither an inadvertent failure to provide adequate care nor negligent treatment or diagnosis is actionable under 42 U.S.C. §1983, as the offending conduct must be wanton. In order to establish deliberate indifference, the plaintiff must prove that the defendant had a culpable state of mind and intended wantonly to inflict pain. DesRosiers v. Moran, 949 F.2d 15,19 (1st Cir. 1991). Where, as in this case, the dispute concerns not the absence of medical care, but the choice of a certain course of treatment, the plaintiff must prove that the treatment was so clearly inadequate that it shocks the conscience or that it amounts to a refusal to provide essential care. See Torraco v. Maloney; 923 F.2d 231, 234 (1st Cir. 1991); Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985); Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1981).

The plaintiff has alleged that the defendants did not provide appropriate care after his shoulder surgery and therefore he has suffered permanent damage. The plaintiff alleges the

4

defendants delayed therapy and improperly removed his staples. As the medical records prove, these allegations are unfounded and incorrect.

The plaintiff's evidence in this case comes nowhere near meeting the extremely high burden of establishing deliberate indifference by the defendants to his medical needs and civil rights. As is demonstrated by the Affidavit of Stanley Galas and the medical records attached thereto, the treatment provided to the plaintiff was appropriate and consistent with his medical condition.

Prior to surgery, the medical staff treated and cared for the plaintiff's shoulder pain. This included physical therapy, cortisone shots and pain medications. When it became apparent that the current treatments were not effective, the plaintiff was scheduled for, and received right shoulder arthroscopy acromioplasty and distal clavicle resection and removal of mass on December 8, 2004 at the LSH. The plaintiff was discharged the same day with care instructions and pain medication including Tylenol #3 and Naprosyn. The surgical pathology report suggested a mature fibroadipose tissue consistent with lipoma and degenerative joint disease which confirmed the pre-operative diagnosis of impingement syndrome and mass right shoulder.

The plaintiff returned to MCI-Cedar Junction and spent the night in the HSU. On December 9, 2004 the plaintiff stated that his arm was throbbing a little bit, but that he felt okay. The plaintiff's dressing was changed and his examination was unremarkable. The plaintiff was discharged back to his unit later that afternoon. On December 13, 2004 the plaintiff was reevaluated. The staples were intact, the area was clean, without swelling or redness and old mild serosanguinous drainage on the pads. The plaintiff complained of mild discomfort. The plaintiff was medically cleared. On December 14, 2004 the plaintiff's dressing was changed. The plaintiff complained of itching in the anterior section of the staples, but no signs of infection

were noted. The area was cleaned and DSD applied.

On or around December 15, 2004 the plaintiff complained to his family authorities that he felt his pain was being poorly controlled. The plaintiff was receiving medications as ordered, including Ultram, APAP, and Motrin, his wound was being well managed, and he had no other complaints nor did he complain of pain beyond a 6 out of 10. The plaintiff had recently undergone shoulder surgery and mass removal. It was expected that the plaintiff may have some pain following the procedures. However, the plaintiff was adequately treated with medications. On December 16, 2004 the plaintiff's dressings were changed and the area surrounding the staples was cleaned. The wound was healing well without complications. The plaintiff did not voice any complaints. On December 18, 2004 the plaintiff's dressings were changed and his wound cleaned. The area was healing well and without complications. The plaintiff refused to have his staples removed, instead insisting that the doctor remove them on the following Monday. The plaintiff's dressings were changed on December 19 and December 20, 2004. By this time the plaintiff's wound appeared healed. On December 20, 2004, the plaintiff refused his pain medication.

On December 27, 2004 the plaintiff returned to the LSH for an orthopedic follow up. The plaintiff's staples were removed, and the wound appeared healed. The plaintiff was instructed in pendulum rehabilitation exercises and told not to lift more than 5 pounds or to extend his arm. The plaintiff was scheduled to return for a follow up in two weeks.

On January 10, 2005 the plaintiff returned to LSH for a orthopedic follow up. The plaintiff complained of pain in his shoulder, and that he had been doing pendulum exercises and that his arm was weak. An examination revealed that the surgical wounds were healing well, with minimal edema of the shoulder. The plaintiff had decreased range of motion and it was

6

969506v1

recommended that he start OT for ROM and strengthening of the right shoulder. The plaintiff received OT on January 18, 2005. The plaintiff was instructed in ROM and strengthening exercises, as recommended by the orthopedic. The plaintiff demonstrated an ability to do all the exercises and was also provided written instructions on the exercises. Finally, the plaintiff was provided a thereband for his strengthening exercises. Additionally, an orthopedic consultation request was submitted for a follow up exam.

On March 10, 2005 the plaintiff returned to the LSH for an orthopedic follow up. The plaintiff had full ROM, though his shoulder remained weak. The orthopedic recommended physical therapy for muscle strengthening. On March 17 and March 29, 2005 numerous physical therapy referrals were submitted. Additionally, on March 22, 2005 the plaintiff was transferred to the DDU due to behavioral problems. Due to the increased security concerns, the plaintiff's thereband was confiscated.

The plaintiff begun the recommended physical therapy on April 5, 2005. An initial examination determined the plaintiff was a good candidate for physical therapy with good potential for success. On April 14, 2005 the plaintiff returned to the LSH for an orthopedic follow up. The plaintiff demonstrated good understanding of his physical therapy exercises and appeared motivated. It was explained to the plaintiff that it would take some time to rebuild his shoulder and arm strength.

On April 25, 2005 the plaintiff had a physical therapy follow up. The plaintiff complained that his shoulder was stiff and painful. The plaintiff's strength was improving, his flexibility was increasing. The plaintiff was advised to avoid certain exercises such as lats, flies, push-ups and benching.

On May 13, 2005 the plaintiff returned for a physical therapy follow up. The plaintiff

969506v1

continued to complain that his shoulder was stiff and a little painful. However, the pain was not limiting the plaintiff's daily acts. The plaintiff returned on June 14, 2005. The plaintiff was advised that he was doing activities that were irritating his shoulder, such as sitting push-ups, and that he should refrain from exercises that cause shoulder pain. On June 29, 2005 the plaintiff complained his shoulder was very sore and that he had been rolling on it when he was sleeping. The plaintiff was seen again on July 14, 2005. Although the plaintiff had some difficulty due to weakness, he was doing well and progressing nicely in his physical therapy. The plaintiff was seen again on August 2, 2005 for a follow up. The plaintiff noted that his shoulder had been feeling pretty good, but that it had popped in the morning. The plaintiff was examined and has his strength and flexibility tested. The plaintiff responded well and did not complain of pain. The plaintiff was progressing well and making gains in all areas. The plaintiff was again seen on August 30, 2005. The plaintiff complained of pain and explained that he had been doing push-ups with pain. The plaintiff was advised to stop doing exercises that hurt his shoulder, and was scheduled for a follow up appointment. The plaintiff has continued to be treated and monitored accordingly, with his physical therapy progressing and his strength increasing.

As clearly illustrated by the medical records, allegations of deliberate indifference are unfounded and unsupported. The plaintiff was provided with appropriate care, including orthopedic follow-ups, occupational and physical therapies and, pain medications. Mr. Gaskins has presented no evidence or even an allegation of the defendants conduct which is "repugnant to the conscience of mankind" or is "an unnecessary and wanton infliction of pain." See Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985), where, as in this case, there is absolutely no evidence of "treatment so inadequate as to shock the conscience, let alone that any deficiency was intentional…," summary judgment is appropriate. Torraco v. Maloney, 923 F.2d 231, 234

8

969506v1

(1st Cir. 1991).

## CONCLUSION

For all of the foregoing reasons, the defendants request that summary judgment be entered in its favor and against the plaintiff in this matter.

| | |
|---|---|
| I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by mail (by hand) on the **28th** day of **October**, 2005.<br><br>/S/ Boaz N. Levin<br>_____<br>James A. Bello / Boaz N. Levin | Respectfully Submitted,<br>The Defendants,<br>STANLEY GALAS AND<br>CARL SINGLETARY, M.D.<br>By their attorneys,<br><br>/S/ Boaz N. Levin<br>_____<br>James A. Bello, BBO# 633550<br>Boaz N. Levin, BBO# 659904<br>MORRISON MAHONEY LLP<br>250 Summer Street<br>Boston, MA 02210<br>(617) 439-7500 |

969506v1