# SEALED  DOCUMENT

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TONY B. GASKINS, PRO SE, ) <br>     Plaintiff ) <br> ) <br> VS. ) <br> ) <br> UMASS CORRECTIONAL HEALTH ) <br> SERVICES, ET AL., ) <br>     Defendants ) | CIVIL ACTION NO.: 05-10858-GAO |

## AFFIDAVIT OF STANLEY GALAS

I, Stanley Galas, on oath depose and swear that:

1. I am a Nurse Practitioner licensed in the Commonwealth of Massachusetts and at all times relevant during the plaintiff's Complaint, worked for UMass Correctional Health Services ("UMass") as the Health Services Administrator at MCI-Cedar Junction..

2. I am familiar with the plaintiff's allegations in this matter and I have personal knowledge of the medical care and treatment he has received while remanded to the custody of the Massachusetts Department of Corrections.

3. Attached hereto are true and accurate copies of pertinent portions of the plaintiff's medical records.

4. Contrary to the plaintiff's allegations, he received appropriate medical care and treatment following right shoulder surgery on December 8, 2004.

5. On December 2, 2004 a consultation request was submitted by NP Porter for right shoulder arthroscopy. The plaintiff had complained of right shoulder pain resulting in decreased range of motion for over a year, and although the plaintiff had received physical therapy, cortisone injections and pain medications, the pain remained. Following an orthopedic examination, surgery was recommended. (Exhibit 1).

968760v1

6. On December 8, 2004, the plaintiff underwent right shoulder arthroscopy acromioplasty and distal clavicle resection and removal of mass at the LSH. The plaintiff was discharged the same day with care instructions and pain medication including Tylenol #3 and Naprosyn. The surgical pathology report suggested a mature fibroadipose tissue consistent with lipoma and degenerative joint disease which confirmed the pre-operative diagnosis of impingement syndrome and mass right shoulder. (Exhibit 2).

7. The plaintiff returned to MCI-Cedar Junction and spent the night in the HSU. On December 9, 2004 the plaintiff stated that his arm was throbbing a little bit, but that he felt okay. The plaintiff's dressing was changed and his examination was unremarkable. The plaintiff was discharged back to his unit later that afternoon. (Exhibit 3).

8. On December 13, 2004 the plaintiff was reevaluated. The staples were intact, the area was clean, without swelling or redness and old mild serosang drainage on the pads. The plaintiff complained of mild discomfort. The plaintiff was medically cleared. On December 14, 2004 the plaintiff's dressing was changed. The plaintiff complained of itching in the anterior section of the staples, but no signs of infection were noted. The area was cleaned and DSD applied. (Exhibits 3 and 4).

9. On or around December 15, 2004 the plaintiff complained to his family authorities that he felt his pain was being poorly controlled. The plaintiff was receiving medications as ordered, including Ultram, APAP, and Motrin, his wound was being well managed, and he had no other complaints nor did he complain of pain beyond a 6 out of 10. On December 16, 2004 the plaintiff's dressings were changed and the area surrounding the staples was cleaned. The wound was healing well without complications. The plaintiff did not voice any complaints. On December 18, 2004 the plaintiff's dressings were changed and his wound

cleaned. The area was healing well and without complications. The plaintiff refused to have his staples removed, instead insisting that the doctor remove them on the following Monday. The plaintiff's dressings were changed on December 19 and December 20, 2004. By this time the plaintiff's wound appeared healed. On December 20, 2004, the plaintiff refused his pain medication. (Exhibits 4 and 5).

10. On December 27, 2004 the plaintiff returned to the LSH for a orthopedic follow up. The plaintiff's staples were removed, and the wound appeared healed. The plaintiff was instructed in pendulum exercises and told not to lift more than 5 pounds or to extend his arm. The plaintiff was scheduled to return for a follow up in two weeks. (Exhibit 6).

11. On January 10, 2005 the plaintiff returned to LSH for a orthopedic follow up. The plaintiff complained of pain in his shoulder, and that he had been doing pendulum exercises and that his arm was weak. An examination revealed that the surgical wounds were healing well, with minimal edema of the shoulder. The plaintiff had decreased range of motion and it was recommended that he start OT for ROM and strengthening of the right shoulder. The plaintiff received OT that same day. The plaintiff was instructed in ROM and strengthening exercises, as recommended by the orthopedic. The plaintiff demonstrated an ability to do all the exercises and was also provided written instructions on the exercises. Finally, the plaintiff was provided a thereband for his strengthening exercises. On January 18, 2005 an orthopedic consultation request was submitted for a follow up exam. (Exhibit 7).

12. On March 10, 2005 the plaintiff returned to the LSH for an orthopedic follow up. The plaintiff had full ROM, though his shoulder remained weak. The orthopedic recommended physical therapy for muscle strengthening. Between March 17 and March 29, 2005 numerous physical therapy referrals were submitted. Additionally, on March 22, 2005 the plaintiff was

transferred to the DDU due to behavioral problems. Due to the increased security concerns, the plaintiff's thereband was confiscated. (Exhibit 8).

13. The plaintiff begun the recommended physical therapy on April 5, 2005. An initial examination determined the plaintiff was a good candidate for physical therapy with good potential for success. On April 14, 2005 the plaintiff returned to the LSH for an orthopedic follow up. The plaintiff demonstrated good understanding of his physical therapy exercises and appeared motivated. It was explained to the plaintiff that it would take some time to rebuild his shoulder and arm strength. (Exhibit 9).

14. On April 25, 2005 the plaintiff had a physical therapy follow up. The plaintiff complained that his shoulder was stiff and painful. The plaintiff's strength was improving, his flexibility was increasing. The plaintiff was advised to avoid certain exercises such as lats, flies, push-ups and benching. (Exhibit 10).

15. On May 13, 2005 the plaintiff returned for a physical therapy follow up. The plaintiff continued to complain that his shoulder was stiff and a little painful. However, the pain was not limiting the plaintiff's daily acts. The plaintiff returned on June 14, 2005. The plaintiff was advised that he was doing activities that were irritating his shoulder, such as sitting push-ups, and that he should refrain from exercises that cause shoulder pain. On June 29, 2005 the plaintiff complained his shoulder was very sore and that he had been rolling on it when he was sleeping. The plaintiff was seen again on July 14, 2005. Although the plaintiff had some difficulty due to weakness, he was doing well and progressing nicely in his physical therapy. The plaintiff was seen again on August 2, 2005 for a follow up. The plaintiff noted that his shoulder had been feeling pretty good, but that it had popped in the morning. The plaintiff was examined and has his strength and flexibility tested. The plaintiff responded well and did not

968760v1

complain of pain. The plaintiff was progressing well and making gains in all areas. The plaintiff was again seen on August 30, 2005. The plaintiff complained of pain and explained that he had been doing push-ups with pain. The plaintiff was advised to stop doing exercises that hurt his shoulder, and was scheduled for a follow up appointment. (Exhibit 10 and 11).

16.     The plaintiff remains incarcerated at MCI-Cedar Junction. The plaintiff continues to receive care and treatment as necessary. As the records reflect, the plaintiff was provided with appropriate medical attention. The plaintiff received surgery, examinations, orthopedic specialist consultations, occupational therapy, physical therapy and pain medication. The plaintiff's claims of deliberate indifference are unsupported by the medical records.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY

THIS 24 TH DAY OF October, 2005.

_____
STANLEY GALAS

968760v1