UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Tony B. Gaskins,

    Plaintiff,

v.

Dr. Carl Singletary, et al.,

    Defendants.

Civil Action
No. 05-10858-GAO

PLAINTIFF'S "VERIFIED" MEMORANDUM OF LAW IN
SUPPORT OF HIS OPPOSITION TO DEFENDANTS
LISA MITCHELL, DAVID NOLAN, SUSAN MARTIN,
STANLEY GALAS AND CARL SINGLETARY, M.D.'S
MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S
CROSS MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

This is a civil action brought against the defendants for their deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution. In particular, due to the defendant's deliberate and intentional delay in getting the plaintiff the proper "after care" for his shoulder in a timely manner which jeopardized his physical well-being causing him pain and suffering that could have been avoided.

## STANDARD OF REVIEW

In order to grant summary judgment, the court must determine that no issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. Bellamy v. McMickens, 692 F.Supp. 205, 210 (S.D.N.Y. 1988). At the summary judgment stage the judge's function

is not to weigh the evidence himself, but to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the moving party must prevail as a matter of law. Id. at 251-252. Mere conclusory allegations or denials will not suffice. Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983). However, since it is the moving party's burden to demonstrate absence of material factual disputes, the court must resolve ambiguities and draw reasonable inferences in favor of the party opposing summary judgment. Hathaway v. Coughlin, 841 F.2d 48, 50 (2d Cir. 1988)(ciatations omitted).

In order to prevail on a section 1983 claim, the conduct complained of must be committed by a person acting under color of state law and the conduct must have deprived the plaintiff of a right or privilege secured by the Constitution or law of the United States. Parratt v. Taylor, 451 U.S. 527 (1981).

**STATEMENT OF FACTS**

As outlined in his amended complaint, on December 8, 2004, the plaintiff had orthoscopic surgery on his right shoulder in his rotator cuff and a piece of his clavicle

-2-

bone had to be removed. [Lemuel] Shattuck Hospital performed the surgery. Amend. Compl. at ¶ 8. During the period of the surgery, the plaintiff was housed in 10 Block Segregation Unit in cell #47. Amend. Compl. at ¶ 9. There was a written order by the surgical doctors that the staples from the surgery had to be removed two weeks after the surgery. At the time [plaintiff] had no mobility in his right shoulder and arm, and had a "no cuff" order for his right arm.[1] Amend. Compl. at ¶ 10. Two weeks after the surgery, plaintiff was being escorted to the Health Service Unit located in 10 Block to have the dressing on his right shoulder changed. Amend. Compl. at ¶ 11. As the plaintiff was receiving treatment on his right shoulder from a nurse named "Michelle," Dr. Carl Singletary was present and examined his shoulder and ordered Michelle to remove the staples from the shoulder. Amend. Compl. at ¶ 12. Shortly after the staples were removed, the plaintiff returned to the Lemuel Shattuck Hospital as a "follow up" to his surgery and was given a Theroband and some instructions to perform self-physical therapy on his shoulder. Amend. Compl. at ¶ 13. The Shattuck doctor also wrote up an order for the plaintiff to receive physical therapy through the prison's Health Service Unit for the lifting

---

[1] In segregation, all prisoners during movement outside their cells, are to be in "full restraints," i.e., handcuff behind the back and leg irons.

of weights, etc. to develop muscle mass lost during and after surgery. Amend. Compl. at ¶ 14.

Upon returning to the prison[2] with the Theroband to use for exercise, the prison administration confiscated the Theroband from the plaintiff and would not allow him to use it. Amend. Compl. at ¶ 5. The plaintiff complained to nurse Michelle who was making a round in 10 Block and the Head Nurse, Jeff Fisher that his Theroband was confiscated by the shift commander, and both Michelle and Fisher told plaintiff that its nothing they could do, but will report it to Stanley Galas, NP, who [was] the Health Service Administrator at the prison. Nurse Practitioner, Stanley Galas, did nothing to help plaintiff. Amend. Compl. at ¶16. The plaintiff then complained to defendants Nolan and Mitchell that he must receive the physical therapy as ordered by the physician to regain strength and mobility in his shoulder or his shoulder would have to be "re-operated" on again. Nolan and Mitchell ignored his pleas. Amend. Compl. at ¶ 17.

Susan J. Martin received a letter from Laura Anderson, Paralegal, who works for Massachusetts Correctional Legal Services, about plaintiff's shoulder and how he has

---

2/ Contrary to what Stanley Galas states in his affidavit and memorandum of law, the Theroband was confiscated on January 10, 2005, at the outer control by the shift commander, long before the plaintiff entered DDU. Mr. Galas is misleading this court.

not received physical therapy. A same letter was sent to Stanley Galas. Amend. Compl. at ¶ 18. Stanley Galas responded that plaintiff was seen by physical therapist on April 5, 2005. Amend. Compl. at ¶ 19. Plaintiff's sister, Sindey A. Hayes, called the prison and spoke to defendant Mitchell, who, in turn, told Mrs. Hayes, "I will look into it." Amend. Compl. at ¶ 20. Months passes by and plaintiff returned to Shattuck Hospital on March 10, 2005 as another follow up. The Doctor, Mary Connolly, questioned if the plaintiff received "any" physical therapy [sessions] since their last meeting. Plaintiff said no. Amend. Compl. at 21. Mary Connolly was frustrated and said that if plaintiff did not receive physical therapy soon, it could cause scar tissue build up and permanent damage. Amend. Compl. at ¶ 22. Ms. Connolly noticed that his shoulder was very "weak" and that he lost a lot of muscle mass. She said they may have to re-operate on his shoulder to remove the scar tissue and to "move" the shoulder joint. Amend. Compl. at ¶ 23.

## ARGUMENTS

I. DEFENDANTS LISA MITCHELL, DAVID NOLAN AND SUSAN MARTIN ARE NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE THEY WERE DELIBERATELY INDIFFERENT TO GASKINS' SERIOUS MEDICAL NEEDS IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION, ENTI-TLING GASKINS TO SUMMARY JUDGMENT AS A MATTER OF LAW

When prison officials are deliberately indifferent to an inmate's serious medical needs, they violate the

inmate's right to be free from cruel and unusual punishment. Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996) citing Estelle v. Gamble, 429 U.S. 97, 104 (1976). Prison officials are more than merely negligent if they deliberately defy the express instructions of a prisoner's doctors. Gill v. Mooney, 824 F.2d 192, 196 (2nd Cir. 1987). If defendants deliberately interfered with [Gaskins'] medically prescribed treatment solely for the purpose of causing him unnecessary pain, they may be subject to liability despite the likelihood that he suffered no permanent injuries. Id. (emphasis added).

    In the case at bar, defendants Nolan, Mitchell and Martin were deliberately indifferent to Gaskins' serious medical needs in violation of the Eighth Amendment due to the long delay it took after surgery to begin physical therapy treatment on his surgically repaired shoulder. The defendants state in their memorandum of law at p. 4 that "[m]edical records show that Gaskins has been seen numerous times by medical staff following his shoulder surgery in December, 2004." Gaskins concedes that he was seen by medical staff numerous times after surgery, however, it was "only" to treat the wound and dressing. It was not for physical therapy. "A medical need is serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even

-6-

a lay person would easily recognize the necessity for a doctor's attention.'" Riddle, 83 F.3d at 1202 (citations omitted). In this case, the defendants had defied the express instructions of both Mary Connolly, Physician's Assistant and Adriana Carrillo, MD -- making them subject to liability.

First, on January 10, 2005, Gaskins was examined by Dr. Carrillo and she made the following findings and order:

> "Patient has very decreased ROM, he needs to start OT for ROM and strengthening of the right shoulder, 2 times a week for 4 weeks, continue codman exercise, he was given also some exercises and a thero- band if ROM does not improve and pain does not decrease by next follow up visit he may need an MUA."

See Exhibit A.

Second, Mary Connolly, PA, examined Gaskins on March 10, 2005 and made the following findings and order:

> "Pt is now 3 months post R shoulder scope and E/O distal clavicle. He is able to perform full ROM but remains very weak.
> ...
> PE: Atrophy at the supraspinatus area continues. Abduction, flexion against resistance are very weak. Ability to push the arm forward is fair compared to excellent on the L.
> ...
> Pt needs Physical Therapy for muscle strengthening or he will injure another area as he attempts to compensate. I understand he is in segregation and cannot have the Theroband so please send in for therapy 2x/week."

See Exhibit B.

-7-

Here it is well documented that it was imperative for Gaskins to receive physical therapy and muscle strengthening 2 times a week. Based on the serious nature of his surgery and the harm it could cause the plaintiff because of the long delay in getting him the proper treatment post surgery, the doctors felt it necessary that the plaintiff attend physical therapy sessions twice a week. However, when the time came for the plaintiff to begin his physical therapy sessions, it only occurred once every two to three weeks in complete contrast to the doctors orders. From the time he was given the Theroband on January 10, 2005 (which was confiscated by prison officials on January 10, 2005), until his very first Physical Therapy session (almost 5 months later), the delayed medical treatment constituted "deliberate indifference" because it significantly affected Gaskins mobility in his arm and has continuously caused him chronic and substantial pain.

The defendants here all were aware of the substantial risk of serious harm that existed due to the plaintiff not receiving the proper after care in a "timely" manner, and in not taking the appropriate action constituted "reckless" conduct. See, e.g., Farmer v. Brennan, 114 S.Ct. 1970 (1994). Here defendants knew of the substantial risk from the very fact that the risk was obvious.

This risk was obvious because Dr. Carrillo stated

-8-

in her findings that "if ROM does not improve and pain does not decrease by next follow up visit he may need an MUA." On the other hand, Mary Connolly, PA, states in her findings "Pt needs Physical Therapy for muscle strengthening or he will injure another area as he attempts to compensate." These findings states the obvious. If Plaintiff's shoulder does not receive immediate physical therapy, the risk for even greater damage increases. In this case, "[t]he delays resulted in constitutional violations." Casey v. Lewis, 834 F.Supp. 1477, 1546 (D.Ariz. 1993).

Defendants Nolan, Mitchell and Martin, who were aware of the substantial risk of serious harm that existed, and who disregarded the risk of harm of which they were aware, had the subjective state of mind or intent necessary for a "deliberate indifference" claim to be brought against them.

As for UMMS staff, they were deliberately indifferent to Gaskins' serious medical needs also. As to UMMS staff "[d]eliberate indifference may be shown when a doctor takes the "easier and less efficacious route in treating an inmate" or when medical care is delayed or denied." McDuffie v. Hopper, 982 F.Supp. 817, 826 (M.D. Ala. 1997). Gaskins has not suggested that "his institutional host" provide him with the most sophisticated care that money can buy. He only sought the immediate

Physical Therapy mandated by the doctor and physician's assistant. There is nothing medically "sophisticated" about that request. If the orders were promptly met by the defendants, Gaskins would have never been damaged and this claim never filed. However, that is not the case and he is damaged and in constant pain and it may be permanent.

The minimum level of medical treatment the Constitution requires was not met here. Plaintiff can establish a § 1983 claim against the defendants. A section 1983 plaintiff must show that the defendants had a sufficiently culpable state of mind. See Cf. Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993). See also Wilson v. Seiter, 111 S.Ct. 2321, 2323 (1991) (at a minimum prisoner must allege deliberate indifference to serious medical needs). As outlined in his pleadings, all defendants were aware of the seriousness of his surgery and the necessary after care required to keep the risk of serious harm to his shoulder, and were deliberately indifferent to his serious medical needs. And second, substantial harm to his shoulder has resulted because of their deliberate indifference.

In Farmer v. Brennan, 114 S.Ct. 1970 (1994), the Supreme Court held that a prison official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to inmate health or safety only if he knows that the inmate faces a "substantial risk of

serious harm" and disregards that risk by failing to take reasonable measures to abate it. [Its obvious from this record and their actions negate the invocation of the Respondeat Superior doctrine]. See Casey v. Lewis, 834 F.Supp., at 1544 n. 2. All defendants concede that they were aware of Gaskins serious medical needs; and can be held liable under section 1983. See Cf. Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987)(Absent some personal involvement by Jones in the allegedly unlawful conduct of his subordinates, he cannot be held liable under section 1983).

Defendants Nolan, Mitchell and Martin alleges in their Memorandum of Law, at p. 9, that they are entitled to rely upon the judgment of medical professionals. The problem with this argument is that the medical professionals here suggested that it was imperative for Gaskins to receive Physical Therapy treatment right away, not almost 5 months after the surgery. So if they are to rely upon the judgment of the medical professionals, they disregarded the doctors judgment to the detriment of Gaskins physical health and well-being.

    II.    THE DEFENDANTS, STANLEY GALAS AND CARL SINGLETARY, M.D.'S, ARE NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE THEY WERE DELIBERATELY INDIFFERENT TOWARDS GASKINS' SERIOUS MEDICAL NEEDS IN VIOLATION OF THE EIGHTH AMENDMENT, ENTITLING GASKINS' <u>TO SUMMARY JUDGMENT AS A MATTER OF LAW</u>

It is a violation of a prisoner's constitutional rights

to be deliberately indifferent to the prisoner's serious medical needs. McDuffie v. Hopper, 982 F.Supp. 817, 826 (M.D.Ala. 1997)(citation omitted). [I]ndifference to a prisoner's serious medical needs constitutes an actionable Eighth Amendment violation under Section 1983. See Estelle v. Gamble, 429 U.S. 97, 105-107 (1976). However, in order to maintain a viable claim for delayed medical treatment there must have been deliberate indifference, which results in harm. Mendoza v. Lynaugh, 989 F.2d 191, 192-193 (5th Cir. 1993).

The defendants, Stanley Galas and Carl Singletary cannot escape liability here because they were directly responsible for Gaskins condition suffered due to not receiving "timely" physical therapy after the surgery on December 8, 2004. The defendants were informed directly after Gaskins' "first" follow up after surgery at the Lemuel Shattuck Hospital by Dr. Carrillo, on January 10, 2005:

> "Patient has very decreased ROM, he needs
> to start OT for ROM and strengthening of
> the right shoulder, 2 times a week for
> 4 weeks, continue codman exercises, he
> was given some exercises and a theroband
> if ROM does not improve and pain does
> not decrease by next follow up visit he
> may need an MUA."

Based on this, Galas and Dr. Singletary knew that Dr. Carrillo wanted Gaskins in Physical Therapy right away so he [Gaskins] could be effectively examined during his

-12-

follow up to see what type, if any, improvement to his shoulder post-surgery. The doctor made it clear in her order that after Gaskins receives his physical therapy, and "if ROM does not imporve and pain does not decrease by next follow up visit he may need an MUA."

If this does not tell the defendants that a substantial risk of harm existed if Gaskins did not receive immediate physical therapy, then the defendants should not be practicing medicine. See Farmer v. Brennan, 114 S.Ct. 1970 (1994). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 114 S.Ct. at 1977. The objective component requires that the deprivation be "sufficiently serious." Farmer, 114 S.Ct., at 1977. The subjective component requires that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind." Farmer, supra.

On January 10, 2005 Dr. Carrillo diagnosed that Gaskins needed physical therapy right away and mandated treatment for 2 times a week for 4 weeks (to be completed before Gaskins next follow up). It was determined that if Gaskins did not receive the physical therapy, it may result in Gaskins needing an "MUA." The potential for further injury to his surgically repaired shoulder was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention."

Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981)(citation omitted).

During Gaskins next follow up on March 10, 2005, in which Gaskins was already supposed to have received Physical Therapy, Dr. Mary Connoly, diagnosed Gaskins and stated:

> "Pt is now 3 months post R shoulder scope and E/O distal clavicle...
>
> Pt needs Physical Therapy for muscle strengthening or he will injure another area as he attempt to compensate. I understand he is in segregation and cannot have the Theroband so please send in for therapy 2x/week."

The plaintiff went to his first physical therapy session in the month of April, 2005 and it was not for "2 times a week" but for "once" every two to three weeks inconsistent with the doctors orders of January 10, 2005 and March 10, 2005. Moreover, defendants in their Memorandum at p. 7 states that "the plaintiff was provided a ther[o]band for his strengthening exercises." Then the defendants goes on to state, "Additionally, on March 22, 2005, the plaintiff was transferred to the DDU due to behavioral problems. Due to the increased security concerns, the plaintiff's ther[o]band was confiscated." Id. (emphasis added). This is far from the truth and the defendants are deliberately deceiving this court.

On January 10, 2005 during Gaskins follow up at

-14-

Lemuel Shattuck Hospital, Dr. Carrillo provided plaintiff with a theroband to use as exercise in his cell until he saw the physical therapist to begin his physical therapy sessions. Contrary to defendants contention, plaintiff was not in DDU when the theroband was taken from him -- he was in Ten Block Segregation Unit on Awaiting Action status. See 103 CMR 423.00, et seq. The theroband was confiscated upon Gaskins arrival at the prison on January 10, 2005, not March 22, 2005 (the day Gaskins entered DDU) as the defendants suggests in their memo at p. 7. See Affidavit of Tony Gaskins at ¶¶ 19-21. Gaskins complained about the confiscation of the theroband and how not having it to exercise with would seriously damage his shoulder. Stanley Galas took no steps to have the plaintiff use the theroband in the hospital unit of the prison as an alternative to the defendant not being allowed to possess it in-cell, nor did Dr. Singletary. However, they both knew the theroband's importance to plaintiff's recovery from major shoulder surgery but failed to take the proper course of actions to ensure Gaskins prompt recovery. Here the defendants Galas, Singletary, Nolan, Mitchell and Martin defied "the express instructions of a prisoner's doctors." Gill, 824 F.2d at 196 (citation omitted).

-15-

Stanley Galas is also being untruthful in his affidavit. In his affidavit at ¶ 9, he states "On December 16, 2004 the plaintiff's dressings were changed and the area surrounding the staples was cleaned. The wound was healing well without complications. The plaintiff did not voice any complaints." This is not true. Plaintiff was always in constant pain and always complained. However, the defendants only wanted to provide plaintiff with Motrin to relieve the pain. Moreover, the plaintiff got sick from taking the Ultram pills and the defendants refused to provide plaintiff with an alternative pain killer that did not get him seriously ill. That was the "only" reason why Gaskins began refusing the pain medication. So, he suffered even greatly because of this and Galas and Singletary did nothing to help Gaskins relieve the pain he obviously incurred because he could not "stomach" the medication he was prescribed.

Also, in Galas' affidavit at ¶ 10, he is again being untruthful. When the staples were removed from plaintiff's shoulder, Dr. Singletary gave the order to Nurse Michelle to remove the staples. After they were removed, plaintiff's arm remained in a sling and was immovable. The sling was removed on January 18, 2005 by Dr. Mary Connolly, and she clearly told the plaintiff he is "not" to try to do "any" lifting, that he must do isometrics "only." On December 27, 2004, Gaskins arm was still in

a sling and had "no strength" whatsoever. Stanley Galas is lying to this court, and he is doing it under oath.

Its the delay in receiving the proper physical therapy that caused plaintiff's pain and suffering. The defendants are liable under 42 U.S.C. § 1983. See, e.g., Casey v. Lewis, 834 F.Supp. 1477, 1546 (D.Ariz. 1992) (These delays resulted in constitutional violations) (citation omitted); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993)(delayed medical treatment ... must have been deliberate indifference, which results in harm)(emphasis added); McDuffie v. Hopper, 982 F.Supp. 817, 826 (M.D.Ala. 1997)(Deliberate indifference may be shown when a doctor takes the "easier and less efficacious route in treating an inmate" or when medical care is delayed or denied)(citation omitted). In this case, medical care was "delayed."

Because of this delay, plaintiff's right shoulder is damaged and to date, Gaskins cannot be handcuffed behind his back. Moreover, contrary to defendants contention, plaintiff never did "sitting push ups." The physical therapist suggested that plaintiff do shoulder exercises on the edge of his bed. Plaintiff tried it but complained it caused him pain, and the other therapist, Carol, told Plaintiff to discontinue the practice. Carol informed the plaintiff that she did not recommend that exercise because it would further damage his shoulder. Gaskins

-17-

informed Carol that the other physical therapist told him to do the exercise.

Based on these facts, the defendants "knew of and disregarded the excessive risk to Mr. Gaskins health or safety."

### III. DEFENDANTS DAVID NOLAN, LISA MITCHELL AND SUSAN MARTIN ARE NOT ENTITLED TO QUALIFIED IMMUNITY

An official is entitled to qualified immunity if he is performing discretionary functions and his actions do "'not violate clearly established statutory or constitutional rights of which a reasonable person would have known." McDuffie v. Hopper, 982 F.Supp. 817, 822 (M.D. Ala. 1997). Under this standard, a government agent is entitled to such immunity unless his "act is so obviously wrong, in the light of preexisting law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing..." Id. (citation omitted).

The defendants Nolan, Martin and Mitchell are not entitled to qualified immunity because this is a case where the risk was longstanding, pervasive, well-documented and expressly noted by prison officials in the past, and they have been exposed to the information concerning the risk and thus "must have known about it."

## CONCLUSION

For the aforementioned reasons, the defendants David Nolan, Lisa Mitchell, Susan J. Martin, Stanley Galas, N.P., Carl Singletary, M.D., are not entitled to summary judgment or dismissal of plaintiff's complaint, and that Plaintiff is entitled to his cross motion for summary judgment as a matter of law, and to all relief sought in his complaint monetarily.

Respectfully Submitted,

Tony B. Gaskins, pro se
MCI-Cedar Junction
2405 Main Street, Rte 1A
South Walpole, Ma. 02071-100

Dated: 11/4/05

## VERIFICATION

I, Tony B. Gaskins, verify that the facts contained herein are true and accurate.

Tony B. Gaskins, Pro se

## CERTIFICATE OF SERVICE

I, Tony B. Gaskins, certify that I caused a true copy to be served on:

Boaz N. Levin
Morrison Mahoney LLP
Counsellors At Law
250 Summer Street
Boston, Ma. 02210-1181

Jody T. Adams, Counsel
Department of Correction
Legal Division
70 Franklin Street, Ste 600
Boston, Ma. 02110-1300

by first class mail, postage prepaid.

Dated: 11/16/05

Tony B. Gaskins, pro se