UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Tony B. Gaskins,

    Plaintiff,

v.

UMass Correctional Health
Services, et al.,

    Defendants.

Civil Action
No. 05-10858-GAO

### PLAINTIFF'S RESPONSE TO DEFENDANTS OPPOSITION TO PLAINTIFF'S MOTION FOR PROPER PENS

Plaintiff files this reply to show defendants pleadings are an "exaggerated response" to a government concern. In support hereof, the plaintiff states:

1. He is not trying to "circumvent" Judge Tauro's ruling denying him proper pens. The plaintiff contends that Judge Tauro did not have the benefit to weigh the evidence, i.e., the "flex pen," this court now has in its possession to examine to determine if the so-called "flex pens" are actually sufficient for writing with.

2. Judge Tauro granted deference to the defendants without the benefit of examining the "flex pen" himself. This court has an exact replica of the pen complained of and can now properly weigh plaintiff's claim and determine if the flex pen is adequate or not.

3. The defendants opposition to this court that the "flex pens" policy is aimed to prevent inmates from stabbing corrections officers and each other with hard plastic pens that could be fashioned into weapons," and

that basically the pens removal was due to "security" concerns is an exaggerated response because there is no evidence that can be produced by the defendants "from which it could be found that all of the inmates, or even a majority of them, were responsible for [whatever] the conditions," Blake v. Hall, 668 F.2d 52, 58 (1st Cir. 1981), i.e., stabbing a corrections officer.

4. The defendants are right when they say that "one" inmate in DDU stabbed two corrections officers with a pen. However, this was the first of its kind to happen in the DDU since its been in operation since 1992. Its an unfortunate situation and not condoned by the plaintiff, however, to use this "one" incident as a "balnket policy" to remove from usage "proper pens" from all inmates is just wrong. It has always been the practice and policy of the Department of Correction that "all" prisoners will be permitted "proper pens," and if [a] prisoner alters his pen or uses it as a weapon, that particular inmate will be punished by having his pens removed and alternative means of pen usage will be implimented for security concerns.

5. This means that the removal of usage of proper pens is detrmined on an individual basis and from an individual prisoner's actions, not to remove regular pens from use by all prisoners due to "one" priosner's actions. What the defendants are saying here is that

because of this "one" prisoner's actions, all prisoners in segregation "will" be made to suffer. This is constitutionally unacceptable. See Blake v. Hall, 668 F.2d at 58 ("We see no reason why well-behaved inmates should have to suffer cruel and unusual punishment because of the actions of some disruptive ones"); Blackburn v. Snow, 771 F.2d 226, 228 n. 2 (1st Cir. 1985)("[t]he fact that particular measures advance prison security...does not make them ipso facto constitutional")(emphasis in original).

6. Moreover, the defendants should not be given deference here because their actions does not meet the foru criterias outlined in Turner v. Safley, 107 S.Ct. 2254 (1987). First, there is no "valid, rational connection" between the blanket policy of removing proper pens for use by segregation prisoners under the existing policy and the legitimate governmental interest put forward to justify it. The defendants cannot connect Mr. Gaskins to their reasons for removing his ability to use proper pens and replacing them with "flex pens" other than that Mr. Gaskins is in DDU. That alone should not be the reason for the deprivation. Second, the only alternative is that the plaintiff must turn in his "non-altered" pen everytime he wants a new one. And if its altered upon turning it in, then he can be provided with a "flex pen."

Third, the impact of providing Gaskins with a regular writing pen will be nil on the guards and administration because what the defendants forgot to tell the court is that a co-plaintiff in Gaskins, et al. v. Nolan, et al., U.S.D.C. No. 05-CV-10630-JLT (LEAD CASE), by the name of Mac Hudson, filed this same motion with Judge Stearn in another matter pending in the United States District Court and it was allowed. Mr. Hudson, who is also a DDU inmate is being provided with proper pens -- and there is no problem with Mr. Hudson. So deference should not be given to the defendants because Mr. Hudson's use of regular pens rebuts the defendants claim that "all" DDU prisoners cannot be trusted to use a regular pen properly. DDU prisoners are no more or less dangerous than general population prisoners. This is an exaggerated response.

And lastly, the alternative is clear. Just as the administration does with Mr. Hudson (now that he is provided with regular pens), where Mr. Hudson must turn in the pen unaltered to receive another one, the same could be done with Mr. Gaskins. And because this alternative "full accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the [policy] does not satisfy the reasonable relationship standard." Turner, 107 S.Ct. at 2262.

7. The DOC was able to successfully argue to the

state courts that an earring stub can be used as a weapon, so inmates should no longer be permitted to wear them. The DOC's reasoning was that the "stub" of an earring could be used to put out an eye. The court gave deference to the DOC and all earrings were removed from all prisons and contraband. Here's the problem: The "flex pens" tips are longer than an earring stub an can be more effective as a weapon than an earring stub, but according to the defendants, its a deterrent. This is not true and the defendants should not be allowed to continue to get away with always using "security" as an umbrella to deprive a prisoner of his rights.

8. Moreover, the "flex pens" can be used as a weapon just as effectively as a hard plastic pen can. Because the tip of the "flex pen" can take out an eye just as easily, so the "flex pen" is really no deterrent to a future assault. What if an inmate decides to stab someone with the "flex pen?" Then what will the DOC have to say then? Will they remove the "flex pen" and say that no more writing is allowed? Would that be fair? The "flex pen" just hinders one's ability to properly and effectively write with. It's no deterrent.

9. The plaintiff does not have every day access to the Law Library to use the typewriter, so a lot of his pleadings filed with the courts will be handwritten. And as this court can see for itself it will be very

difficult to write "extensive" pleadings with the "flex pen" without serious alterations to the pen.

WHEREFORE, the plaintiff prays his motion is allowed.

Respectfully Submitted,

_____
Tony B. Gaskins, Pro se
MCI-Cedar Junction
P.O. Box 100
South Walpole, Ma. 02071

Dated: 12/30/05

### CERTIFICATE OF SERVICE

I, Tony B. Gaskins, certify that I caused a copy of the foregoing to be served on: Jody T. Adams, Counsel, Department of Correction, Legal Division, 70 Franklin Street, Suite 600, Boston, Ma. 02110-1300, by first class mail, postage prepaid.

_____
Tony B. Gaskins, Pro se

Dated: 1/2/05

United States District Court.

For the

District of Massachusetts

FILED
IN CLERKS OFFICE
2005 JUN 20 P 2 35

C.A. NO. 05-12404-RGS

Mac S. Hudson

v.

John Marshall et. al.

Defendants

Verified Motion For An Order
For Proper Pens To File Pleadings
In This Action

Allowed. R.M. Stearns DJ 7-12-05

Now comes the Plaintiff Mac Hudson and moves this Court to order Defendants to provide proper pens to him to file pleadings in various courts, for the following reasons:

1. On December 28, 2004, prison staff has been giving Plaintiff whats called a "soft pen", which is a tube of ink wrapped in a plastic, jelly-like, wrap with the tip of a pen at the bottom.

2. When Plaintiff tries to write with the pen, it bends, as if trying to write with a drinking straw. One cannot put at all or it bends and the tip turns away from the paper. Hudson has to construct the pen in order to stublize it enough to write, which makes the pen contraband and confiscated by officials.

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

C.A. NO. 00-12404-RGS

MAC S. HUDSON

v.

JOHN MARSHALL ET. AL
Defendants.

## MOTION TO ORDER DEFENDANTS TO PROVIDE COURT WITH A SOFT PEN FOR EXAMINATION

Plaintiff Mac Hudson moves this court to order Defendants to provide it with a "soft pen" for examination for the following reasons:

1. Filed contemporaneously with this motion is a motion explaining to the court that, beginning on December of 2005 the defendants have been giving him so-called "soft pens", which he cannot use to do the type and volume of legal work he has to do.

2. Plaintiff request that this court see for itself that the pens at issue cannot be used for the work Hudson must prepare.

Moot. R.D. Stearns DJ 7-12-05.



*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*

Department of Correction
M.C.I. Cedar Junction at Walpole
P.O. Box 100
South Walpole, Massachusetts 02071
Tel: (508) 660-8000 Fax: (508) 660-8009
www.mass.gov/doc

Mitt Romney
*Governor*

Kerry Healey
*Lieutenant Governor*

Edward A. Flynn
*Secretary*

Kathleen M. Dennehy
*Commissioner*

James Bender
*Deputy Commissioner*

David Nolan
*Superintendent*

August 12, 2005

Mac Hudson
MCI-Cedar Junction
Post Office Box 100
South Walpole, MA 02071

RE:   Hudson v. Bender et al., SUCV2005-1749

Dear Mr. Hudson:

Please be advised that in regard to your motion for a regular pen, allowed by the court, enclosed please find two pens. Once you have used both pens, please send them back to me and I will send you two new pens.

Sincerely,

Cheryl A. Maher
Paralegal

cc:   David Nolan, Superintendent
      Lisa Mitchell, Deputy Superintendent
      Stephen Dietrick, DOC-Legal Division
      Inmate File
      File

PRINTED ON RECYCLED PAPER