UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TONY B. GASKINS, PRO SE, )<br>    Plaintiff                )<br>                                  )<br>VS.                            )<br>                                  )<br>UMASS CORRECTIONAL HEALTH )<br>SERVICES, ET AL.,           )<br>    Defendants            ) | No. 05-10858-GAO |

## DEFENDANTS, STANLEY GALAS AND CARL SINGLETARY'S RESPONSE TO PLAINTIFF'S WRITTEN OBJECTIONS

NOW COMES the defendants, Stanley Galas and Carl Singletary, by counsel, and respond to plaintiff's written objections to the report and recommendations of the Honorable Judge Bowler. As grounds for this Motion, the defendants state the following:

1. This is a claim by a *pro se* inmate charging violations of his civil rights in the health care and treatment rendered to the plaintiff.

2. On October 28, 2005, the defendants filed a Motion for Summary Judgment as to all claims. On November 22, 2005, the plaintiff filed an Opposition and Motion for Summary Judgment.

3. On July 31, 2006, the Honorable Judge Bowler granted the defendants Motion for Summary Judgment

## ARGUMENT

The plaintiff has not proved any new evidence to support his previously denied position that the defendants were deliberately indifferent to the plaintiff's medical needs. Rather, the plaintiff just disagrees with the court's position. The plaintiff believes that the medical treatment

1019581v1

provided was deliberately indifferent, while the defendants, and the court, disagree with the plaintiff's position.

Furthermore, the plaintiff has misinterpreted the medical records. The plaintiff argues the defendants refused to provide the medical care that was needed, which is simply not the case. As has previously been presented to the court in the defendants' Summary Judgment Motion, the plaintiff received shoulder surgery in December 2004, and after the appropriate recovery time, the plaintiff was instructed on rehabilitation exercises. The plaintiff also received occupational therapy, range of motion exercises and strengthening exercises as recommended by the orthopedist. The plaintiff regained full range of motion yet his shoulder remained weak. Per the orthopedic recommendation, the defendants submitted physical therapy referrals. Due to the plaintiff's behavioral problems, he was transferred to the DDU, where, due to DOC security policies, the plaintiff had his Thereband confiscated. The plaintiff choices to ignore the fact that his thereband was confiscated due to his behavioral and disciplinary problems leading to transfer to the DDU. The plaintiff is also well aware of DOC policies regarding what is, and what is not allowed in the DDU. The defendants did not just randomly confiscate the thereband as the plaintiff would like one to believe, rather, the band was confiscated for significant and realistic security concerns.

The medical records also confirm the plaintiff received physical therapy instructions and repeated orthopedic consultations with marked improvements in shoulder range of motion, strength and flexibility. Although the plaintiff complained of shoulder pain, his orthopedic examinations and physical therapy follow-ups showed improvement. The care and treatment provided is well documented in the medical records. While the plaintiff might be unhappy with the medical care he received, this does not mean it rises to the level of deliberate indifference in

1019581v1

violation of his civil rights. To the contrary, the records support the defendants position that appropriate treatment was provided through surgery, orthopedic consultations, physical therapy and occupational therapy. The plaintiff has provided no new evidence to suggest the defendants violated his civil rights, rather he just repeats his initial arguments and disagrees with the court's ruling, a ruling which has already been made.

Additionally, the plaintiff complains that he was not able to properly prove his allegations because discovery was not completed before the Motions for Summary Judgment were decided. The plaintiff has access to his entire medical chart, as did the defendants. These medical records outline the care and treatment provided. They provide a detailed explanation and record of what occurred. Based on these records, the defendants maintain, and this Honorable Court agreed, that the defendants did not violate the plaintiff's civil rights.

Finally, the plaintiff has not requested any relief from the court. Rather, the plaintiff has just noted his objections and disagreements. Therefore, the defendants suggest the plaintiff's Written Objections is nothing more than an open letter to the court, and as such, no action is needed. However, in the event this court treats the plaintiff's filing as a Motion for Reconsideration, this Response should serve as an Opposition.

1019581v1

WHEREFORE, defendants request that this Honorable Court Deny the plaintiff's Written Objections.

|  |  |
|---|---|
| | Respectfully Submitted,<br>The Defendants,<br>STANLEY GALAS AND<br>CARL SINGLETARY, M.D.<br>By their attorneys, |
| I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by mail (by hand) on the **30th** day of **August**, 2006.<br><br>/S/ Boaz N. Levin<br>_____<br>James A. Bello / Boaz N. Levin | /S/ Boaz N. Levin<br>_____<br>James A. Bello, BBO# 633550<br>Boaz N. Levin, BBO# 659904<br>MORRISON MAHONEY LLP<br>250 Summer Street<br>Boston, MA 02210<br>(617) 439-7500 |

1019581v1

Case 1:05-cv-10858-GAO  Document 50  Filed 08/30/2006  Page 5 of 13 20035
Case 1:05-cv-10858-GAO  Document 49  Filed 08/15/2006  Page 1 of 9
JAB/BWL

Mr. Tony B. Gaskins
MCI-Cedar Junction
P.O. Box 100
South Walpole, Ma. 02071

Clerk' Office
United States District Court
1 Courthouse Way, Suite 2500
Boston, Ma. 02210

2006 AUG 15 P 1:57

August 3, 2006

FILED IN CLERK'S OFFICE
US COURT OF APPEALS
FOR THE FIRST CIRCUIT

Re: Gaskins v. Dr. Carl Singletary, et al.,
    No. 05-CV-10858-GAO

Dear Clerk,

   Enclosed for filing please find the following:

   1. Tony B. Gaskin Written Objections To The Report And Recommendation of U.S.M.J. Bowler's Ruling with Certificate of Service and Exhibits.

   Thank you for your attention to this matter.

                                        Very truly yours,

                                        Tony B. Gaskins, Pro se

Enclosures

cc: James A. Bello, Esq.
    Jody T. Adams, Esq.

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

Tony B. Gaskins,

    Plaintiff,

v.

Dr. Carl Singletary, et al.,

    Defendants.

Civil Action
No. 05-10858-GAO

**TONY B. GASKINS WRITTEN OBJECTIONS TO THE REPORT
AND RECOMMENDATIONS OF U.S.M.J. BOWLER'S RULING**

The Plaintiff received the July 31, 2006 Report and Recommendation of Magistrate Justice Bowler on August 2, 2006 and makes the following objections:

1. The plaintiff objects to the Magistrate findings that although he meets the first prong of Farmer v. Brennan, 511 U.S. 825, 834 (1994), that his shoulder surgery met the "objectively, sufficiently serious" standard, he was unable to prove the second prong "that prison officials possessed a sufficiently culpable state of mind, namely one of deliberate indifference to an inmate's health." See Framer v. Brennan, 511 U.S. at 829 (requiring a showing that the official was subjectively aware of the risk).

The problem here is that the prison officials Nolan, Mitchell and Martin was aware of the "risks" involved if the plaintiff did not receive prompt adequate "after care" to his shoulder post-surgery. Dr. Carrillo warned that if immediate therapy was not provided Mr. Gaskins that second surgery was imminent.

Case 1:05-cv-10858-GAO    Document 50    Filed 08/30/2006    Page 7 of 13
Case 1:05-cv-10858-GAO    Document 49    Filed 08/15/2006    Page 3 of 9

-2-

2. Dr. Carrillo's assessment turned out to be prophetic because the plaintiff received a second MRI on his shoulder at the Lemuel Shattuck Hospital and in its findings, Dr. Joshua Stein assessed that "[t]here is fragmentation of the distal clavicle. There is a significant amount of separation between the distal clavicle and acromion. Edema is also seen in the surrounding soft tissues. There is a marked amount of spurring surrounding the acromion." See attached exhibits. The plaintiff does need second surgery to correct the errors of the past, and the defendants all were deliberately indifferent to his serious medical needs because they ignored both Dr. Carrillo's and mary Connolly's orders.

3. The Magistrate Justice seems to believe that the defendants failure to provide the plaintiff with the proper after care was "inadvertent." See Report and Recommendation at p. 17. She ignores the fact that Dr. Carrillo and Mary Connolly, NP was adamant in their orders that physical therapy was to be provided to the Plaintiff "shortly" after her order that Mr. Gaskins was to be sent to physical therapy for 2x a week for 4 weeks until the next follow up. The defendants Singletary, Galas, Nolan, Mitchell and Martin were all aware of the doctor's orders but none followed up on it until "months" later. The "risk" of harm to Mr. Gaskins was apparent because the doctor warned eceryone of the potential harm that would result if Mr. Gaskins was given the therapy prescribed.

-3-

The defendants actions were not inadvertent, their actions were deliberate and indifferent to Mr. Gaskins serious medical needs. The defendants here did not "take reasonable measures to guarantee the safety and health of Mr. Gaskins." Farmer v. Brennan, 511 U.S. at 832 (emphasis added).

4. The Magistrate Justice contends that since Dr. Singletary knew that Gaskins was provided with a Theraband (although Gaskins never had a chance to use it), and that Dr. Singletary knew that Gaskins had "demonstrated" an ability to perform all of the exercises provided to him at LSH, and since Dr. Singletary had no actual knowledge that Gaskins was not performing the range motion and strengthening exercises, that he is exempt from liability. See Report and Recommendation at pp. 19-20. This is improper because Singletary was the "Head Doctor" at the prison and is responsible for the care of all prisoners within the prison ("MCI-Cedar Junction"). He was aware that the Theraband was taken from Gaskins and he provided no alternative means to allow Gaskins to use the Theraband.

5. On January 10, 2005 after Dr. Carrillo's written instructions on Gaskins need to be provided physical therapy two times a week for four weeks before the next follow up, this doctor's orders were completely ignored by all of the defendants. The doctor ordered the therapy before the next

-4-

follow up because she would have been able to properly assess the progress, if any, of the shoulder post-surgery. However, since everyone at the prison ignored the order, and when the plaintiff returned for the "follow up" and the doctors found out that he never received the ordered therapy, Mary Connolly issued another order for therapy. And as Magistrate Bowler points at pp. 21-22, then Galas and Dr. Singletary moved to have Gaskins seen by the physical therapist. Not when the original order was given by Dr. Carrillo, but months later after Connolly, NP had to re-issue the order. The whole basis of Gaskins claim is that he was provided with the proper after care that led to his debillitating conditions now prevalent because of the deliberate indifference of all of the defendants. All of the defendants were aware of the substantial risk posed to Gaskins by the confiscation of the Theraband. The Theraband is a significant part of the rehabilitation process of post shoulder surgery. Any doctor practicing medicine knows that. This meet the <u>Gill</u> v. <u>Mooney</u> 824 F.2d 192 (2d Cir. 1987).

6. Contrary to the magistrate's findings at pp. 23-24, at his April 5, 2005 therapy session, the physical therapist did not make such determination to require therapy two to four times a month. That is a practice that is conducted on all prisoners within the DOC who has orders for physical therapy. This is something new that was not provided to the

-5-

plaintiff. And if discovery was permitted -- and this alleged fact contended by the defendants -- the plaintiff would have been able to successfully rebut this improper evidence. However, the plaintiff was not and he objects to not being provided the proper discovery to successfully bring forth his medical claims.

7. Moreover, the Magistrate Justice seems to believe that since the therapist modified the doctor's orders, that was enough to satisfy her that his medical needs was not that serious. First, the therapist is not a doctor. Second, the therapist does not have the authority to "override" a doctors order, specifically the doctor who performed the shoulder surgery on Gaskins' shoulder. This is obviously something that was did but not sanctioned by the surgical doctors. It was not the therapist's position make that judgment call. It was the therapist job to perform the therapy in the manner as instructed by the doctors. This order was defied in the face of serious harm to the plaintiff. Because in this case the plaintiff has suffered permanent injury. Gill v. Mooney, 824 F.2d at 196. The January 6, 2006 report from LSH after receiving an MRI supports the plaintiff that he is suffering permanent injury, and as a result, must receive "second surgery."

8. Dr. Singletary nor Galas responded "reasonably" in the face of Dr. Carrillo's January 10, 2005 order. The plain-

-6-

tiff did not receive his "first" physical therapy session until April. That was not even remotely close to what the doctor suggested when the plaintiff was to be seen. How can that be deemed a "reasonable" response?

9. The Magistrate Justice believes that because the plaintiff "demonstrated an ability" to perform the exercises, that ths proves that he was doing fine. Well, one demonstrating an ability to perform an exercise is quite different from one "actually" doing the exercise, in which case Gaskins was not able to at the time. Isometrics alone cannot treat the shoulder properly after shoulder surgery in the manner that was provided to Gaskins and summary judgment was not appropriate here because the plaintiff stated genuine issues of material facts that were in dispute. Shahzade v. Gregory, 930 F.Supp. 673 (D.Mass. 1996).

10. Gaskins objects to the exclusion of UMass Correctional Health Services as defendants because of the doctrine of respondeat superior. He also objects to the findings that Nolan, Mitchell and Martin should be excluded on the basis that Gaskins failed to put "under the pains and penalties of perjury" in his verification section of his complaint. This is not the sole basis of excluding defendants in civil proceedings and its not a mandatory criteria to do so.

11. Nolan, Mitchell and Martin are involved with this because Gaskins is under their custody and care and were

responsible for his well being -- meaning if the doctors Singletary and Galas were unable to perform their duties to assure the plaintiffs post-surgery therpay was provided within a reasonable manner, then once they became aware of the potential serious risk of harm to plaintiff's serious medical needs, then it was on them to assure that Gaskins was provided the proper medical treatment post-surgery. This they failed to do contrary to the Magistrate's findings at p. 27. The plaintiff has stated an Eighth Amendment claim that does not "dooms" his supervisory claim." Cf. Torres-Viera v. Laboy-Alvarado, 311 F.3d 105, 108 (1st Cir. 2002) ("failure to state any Eighth Amendment claim whatsoever dooms [the plaintiff's] supervisory claim").

12. Gaskins motion to stay pending discovery should have been allowed because he needed discovery to prove that Mitchell, Nolan and martin were all aware of the serious risk of harm to his shoulder and health by not being provided the proper after care. This fact would have been proven by depositions where tough questions could have been asked the defendants under oath in whicha truthful answer was warranted. However, as the proceedings stand, its the plaintiffs words against the defendants and the magistrate has seemed to have taken the words "alone" of the defendants without giving the plaintiff the proper forum to respond and rebut the defendants claims. See Fed. R. Civ. P. 56(f). Moreover,

-8-

the magistrate states that since Gaskins was able to fully respond to the defendants summary judgment motion, he was not entitled to discovery. The problem with this ruling is that the motion was before the court before Gaskins filed his opposition and cross motion for summary judgment. And he responded in full to the defendants motions because he was under the impression that he would not be allowed to pursue discovery proceedinsg against the defendants, whereas no immediate ruling was issued on his discovery motion. He did not want to risk losing without any response because the same ruling would have resulted whether if he responded in full or not. Mr. Gaskins was never given the opportunity to fully develop the record and prove his case. And as a result, Gaskins was not able to properly defend his claims.

Respectfully Submitted,

Tony B. Gaskins, Pro se
MCI-Cedar Junction
P.O. Box 100
South Walpole, Ma. 02071

Dated: 8/3/06

## CERTIFICATE OF SERVICE

I, Tony B. Gaskins, certify that I caused a true copy to be served on:

James A. Bello, Esq.
Morrison Mahoney, LLP
250 Summer Street
Boston, Ma. 02210

Jody T. Adams, Esq.
Department of Correction
Legal Division
70 Franklin Street, Suite 600
Boston, Ma. 02110-1300

Dated: 8/3/06

Tony B. Gaskins, Pro se